DISCIPLINARY COUNSEL *v*. WISE.

[Cite as *Disciplinary Counsel v. Wise*, 108 Ohio St.3d 381, 2006-Ohio-1194.]

(No. 2005–1182—Submitted November 30, 2005—Decided March 29, 2006.)

---

**Per Curiam.**

{¶ 1} Respondent, David Michael Wise of Cleveland, Ohio, Attorney Registration No. 0037837, was admitted to the Ohio bar in 1987. On February 22, 2006, in a case unrelated to this one, we suspended him from the practice of law for one year, with the last six months stayed, for violating DR 7–102(A)(1) (prohibiting a

lawyer from acting merely to harass another during representation), 7–105(A) (barring a lawyer from threatening to pursue criminal charges solely to obtain advantage in a civil matter), and 9–101(C) (prohibiting a lawyer from stating or implying the ability to influence improperly a tribunal, legislative body, or public official). *Cuyahoga Cty. Bar Assn. v. Wise,* 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35.

{¶ 2} In connection with the allegations before us in this case, relator—Disciplinary Counsel—filed a complaint on August 9, 2004, charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in March 2005. The panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Misconduct

{¶ 3} Respondent—who practiced law in Cleveland—maintained an account into which he deposited fees from clients, personal funds, and cash between 2002 and 2004. In establishing the account, he had designated it as an IOLTA (interest on lawyers' trust accounts) account. Respondent also transferred money from his business account into the IOLTA account.

{¶ 4} Respondent testified at his disciplinary hearing that he had no client ledgers, records, or receipts showing the source of some of the funds deposited into the IOLTA account. He also stated that he might have loaned money in the IOLTA account to others, but he had no records documenting the loans or any repayments.

{¶ 5} Respondent paid personal obligations and funded personal accounts from the money in his IOLTA account. He wrote checks from the trust account totaling over $23,000 payable to his wife, as well as checks to Hometown Buffet, Lowe's, Federal Express, and Auto Zone.

{¶ 6} On several occasions between 2002 and 2004, respondent overdrew his IOLTA account, creating a negative balance in the account. He was charged overdraft fees for bounced checks twice in 2002, 12 times in 2003, and five times in 2004.

{¶ 7} Respondent acknowledged at his disciplinary hearing before the panel that he had "misused" his IOLTA account by treating it "as though it were just a regular office account." But he denied that there were ever any client funds in the account. Although the source of much of the money in the account was attorney fees, he testified that the fees had all been earned before they were paid and that the account had never held unearned retainers or other funds of clients.

{¶ 8} The board found that respondent had violated DR 1–102(A)(5) (barring conduct prejudicial to the administration of justice), 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law), 9–102(A) (requiring lawyers to maintain client funds in a separate, identifiable bank account), and 9–102(B)(3) (requiring lawyers to maintain complete records of all client funds and to render appropriate accounts regarding them). The case is now before us on respondent's objections to the board's findings of fact, conclusions of law, and recommendation.

{¶ 9} Respondent argues in his objections that relator "failed to establish who the funds deposited into the IOLTA account were obtained from or for what purposes they were tendered." Yet it is he who designated the account as a trust account when he established it, giving rise to the inference that it would hold client funds. If he now claims that it held only his funds, never client funds, he is the one who should present evidence to support the claim. He is the only one whose billing records could prove his claim that all fees were earned before they were deposited. He provided no such records for his IOLTA account during the disciplinary process.

{¶ 10} And respondent was hardly forthcoming with information about his IOLTA account. When relator first inquired about the negative balance in the account, respondent claimed in a letter that his "records indicated a positive balance of several thousand dollars" in the trust account. Relator then asked to see those records in February 2004, but respondent did not reply, prompting relator to issue a subpoena duces tecum for the records. Respondent never produced any records reflecting a positive balance in the account for the time periods when the bank records showed that the trust account was overdrawn. Even so, at his disciplinary hearing he stated, "I produced all the material that you asked me for." When pressed again by relator at that hearing to produce the records showing a positive balance in the account, he finally acknowledged, "There is no record per se showing a positive balance in my IOLTA." His initial claim that such records did exist was not candid, and his delays and equivocations raise concerns for us about his integrity.

{¶ 11} When questioned at his disciplinary hearing about the source of the money in the account, respondent insisted, "[I]t's my money. * * * I know that it's my money." Yet he also acknowledged at the hearing that the account was indeed an IOLTA account rather than an ordinary business account for his law practice, and the exhibits introduced at respondent's disciplinary hearing show that at least some of the money deposited into the account represented legal fees paid by clients. One of the checks had the notation "Retainer" on the memo line. Moreover, in a letter to relator in January 2004, respondent stated that some of the money in the account belonged to a person for whom he had a power of

attorney. In view of this evidence, respondent's evasiveness, and his designation of the account as an IOLTA account, we do not credit his conclusory testimony that no funds of clients were ever in the account. Respondent therefore should not have deposited his own funds into the account, for as we have said, "Canon 9 of our Code of Professional Responsibility requires the separation of client funds from those of the lawyer, not only to protect the client, but also to avoid even the appearance of impropriety." *Erie–Huron Counties Joint Certified Grievance Commt. v. Miles* (1996), 76 Ohio St.3d 574, 576, 669 N.E.2d 831.

## Sanction

{¶ 12} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As an aggravating factor, the board found that respondent had been charged with committing prior disciplinary offenses (and we have now imposed the suspension noted above for those offenses). The board also found that respondent failed to cooperate in the disciplinary process, provided evasive testimony during that process, and lacked a sense of responsibility and remorse for his misconduct. BCGD Proc.Reg. 10(B)(1)(a), (e), (f), and (g). Those factors "do not bode well for his rehabilitation," according to the panel that heard and saw respondent testify.

{¶ 13} In mitigation, the board noted that no evidence suggests that anyone lost money as a result of respondent's mismanagement of his IOLTA account.

{¶ 14} Relator recommended that respondent be suspended from the practice of law for one year with six months of the suspension stayed. The panel agreed with that recommendation, as did the full board. We have reviewed the board's report and have also considered the written and oral arguments presented by the parties in response to that report. We find that respondent violated all of the provisions cited in the board's report, but we disagree with the board's recommended sanction. The appropriate sanction in this case is an indefinite suspension.

{¶ 15} Ten years ago, we stated that it is "of the utmost importance that attorneys maintain their personal and office accounts separate from their clients' accounts" and that any violation of that rule "warrants a substantial sanction whether or not the client has been harmed." *Miles*, 76 Ohio St.3d at 577, 669 N.E.2d 831. And in an earlier case, we explained that the "mishandling of clients' funds either by way of conversion, commingling, or just poor management, encompasses an area of the gravest concern of this court in reviewing claimed attorney misconduct." *Columbus Bar Assn. v. Thompson* (1982), 69 Ohio St.2d 667, 669, 23 O.O.3d 541, 433 N.E.2d 602.

{¶ 16} Respondent's extended misuse of his client trust account between 2002 and 2004, his failure to maintain or produce adequate records documenting account deposits and withdrawals, his multiple overdrafts from the trust account, and his lack of cooperation and candor during the disciplinary investigation point toward the need for a suspension to protect the public. And in light of respondent's very recent suspension for additional and unrelated ethical violations, see *Cuyahoga Cty. Bar Assn. v. Wise,* 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, we find that an indefinite suspension is warranted for this latest misconduct.

{¶ 17} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

PFEIFER, O'DONNELL and LANZINGER, JJ., dissent and would suspend respondent for 12 months, with six months stayed.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

David M. Wise, pro se.