DISCIPLINARY COUNSEL *v.* CROSBY.

**[Cite as *Disciplinary Counsel v. Crosby,* 124 Ohio St.3d 226, 2009-Ohio-6763.]**

*Attorneys — Misconduct — Failure to maintain separate account and to keep complete records of trust account — Conduct adversely reflecting on fitness to practice law — Twenty-four-month suspension.*

(No. 2009-1172 — Submitted September 30, 2009 — Decided December 29, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-018.

_____

LANZINGER, J.

{¶ 1} Respondent, William Matthew Crosby of Cleveland, Ohio, Attorney Registration No. 0002451, was admitted to the practice of law in Ohio in 1982. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for 24 months, based on findings that he engaged in long-standing fraudulent trust account practices and deliberate deceptions. We agree that respondent committed professional misconduct as found by the board and accept the recommendation for a 24-month suspension.

{¶ 2} In April 2008, relator, Disciplinary Counsel, filed a three-count complaint against respondent alleging multiple violations of the former Code of Professional Responsibility and the current Rules of Professional Conduct, effective February 1, 2007.[1] Respondent filed an answer, and a panel of the board held a hearing on the complaint in December 2008. The panel prepared written

_____

1. Because respondent's misconduct occurred both prior to and after the adoption of the Rules of Professional Conduct on February 1, 2007, relator charged respondent under the applicable rules of both the former Code of Professional Responsibility and the current Rules of Professional Conduct. Relator, however, agrees that each listing constitutes only one violation.

findings of fact, conclusions of law, and a recommendation that respondent be suspended from the practice of law for two years with one year stayed on conditions. The board adopted the panel's findings of fact and conclusions of law but recommended that respondent be suspended for 24 months.

**Misconduct**

{¶ 3} During 2005 and 2006, respondent practiced law as Crosby Law Offices, L.L.C., and worked primarily in the areas of workers' compensation, personal injury, and tort law. Around December 2006, he ceased practicing as Crosby Law Offices, L.L.C., and accepted a position as of counsel for his wife's law firm, Elizabeth A. Crosby and Associates. While he operated his solo practice, respondent maintained two bank accounts, an Interest on Lawyers' Trust Accounts account ("IOLTA") in the name of the Crosby Law Offices, L.L.C., and a general operating account in the name of the Crosby-Dodge Law Group, L.L.C. ("operating account"). Respondent had amended the signature card for the IOLTA to designate Carol Mazanec as an authorized signer on the account to allow her authority to write checks. Mazanec provided clerical, administrative, and paralegal services for respondent during the years 2005 and 2006 and wrote and signed a number of checks from the IOLTA on behalf of and as authorized or ratified by respondent.

{¶ 4} All of the violations alleged by relator arise from the use and maintenance of respondent's IOLTA.

*Count I – Use of the IOLTA as a Personal and Operating Account*

{¶ 5} From the testimony and exhibits admitted at the hearing, it is clear that respondent used his IOLTA as a personal bank account and operating account from January 2006 to May 2007. There were approximately 20 checks payable to Mazanec, in a stipulated amount of $57,713, which represented wages or bonuses. On 18 occasions, there were electronic withdrawals for the payment of phone bills to Verizon, Ameritech, or AT&T. Approximately 16 checks were written by

2

either respondent or Mazanec for office or personal bills owed to Dominion East Ohio Gas, Gepetto's Pizza, Home Depot, Plant Crafters, CVS, Wyatt Tractor, Brooks Brothers, Web Office Solutions, and Cort Furniture Rental. The eight checks written to respondent's wife totaling $142,823.48 were for respondent's household expenses. Finally, respondent admitted that there were 68 checks totaling more than $88,000 made payable to cash. Mazanec testified that these funds went to respondent's personal use.

{¶ 6} Respondent acknowledged that he knew business expenses should not be paid from his IOLTA. He also stated that he inadvertently wrote checks to Brooks Brothers and Wyatt Tractor for personal expenses from the IOLTA.

{¶ 7} We accept the board's finding that respondent violated DR 1-102(A)(6) and its counterpart, Prof.Cond.R. 8.4(h) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law); DR 9-102(A) (requiring all funds of clients paid to a lawyer to be deposited in one or more identifiable bank accounts, in which no funds belonging to the lawyer shall be deposited); and Prof.Cond.R. 1.15(a) (a lawyer shall hold property of clients separate from the lawyer's own property).

*Count II – Failure to Properly Maintain and Safeguard the IOLTA*

{¶ 8} At the hearing, respondent conceded that he did not properly train Mazanec and did not properly supervise her with regard to the IOLTA. Although respondent represented that he had had his accountant train Mazanec, she herself testified that she was not given any training on how to use an IOLTA by either respondent or his accountant. The panel found that Mazanec's testimony was more credible.

{¶ 9} Respondent stated that he was not aware that Mazanec had used the IOLTA to pay telephone bills from Verizon, Ameritech, and AT&T or personal expenses at Home Depot and CVS but that he later ratified her actions. In addition, he was not aware that Mazanec used the IOLTA to negotiate a check

written to her by her boyfriend. A simple review of the IOLTA statements would have revealed the inappropriate electronic withdrawals for the telephone bills, but respondent admitted that he did not personally reconcile the banking statements. Instead, respondent stated that he held earned attorney fees in his IOLTA and basically kept a running total of the amount owed to him in his head. During this time period, the IOLTA incurred overdraft fees of $118.50.

{¶ 10} Finally, respondent testified that he was surprised at the extent of moneys that he had intended to be deposited into his operating account that were never deposited there. He also asserted that he kept a portion of his earned attorney fees in his IOLTA to pay unexpected client expenses and that only settlement moneys were deposited into the trust account. Finally, he stated that he sometimes asked Mazanec for checks to pay his bills, that she would give him IOLTA checks, and that he mistakenly used the IOLTA checks without realizing the error. The panel found that respondent's representations were not credible.

{¶ 11} We therefore accept the board's findings that respondent violated DR 1-102(A)(5) and its counterpart, Prof.Cond.R. 8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice); DR 1-102(A)(6) and its counterpart, Prof.Cond.R 8.4(h); DR 9-102(B)(3) (a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer); Prof.Cond.R. 1.15(a); Prof.Cond.R. 1.15(a)(3) (a lawyer shall maintain a record of each IOLTA); and Prof.Cond.R. 5.3(b) (a lawyer shall take reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer).

*Count III – Failure to Promptly Withdraw Earned Funds*

{¶ 12} Between 2006 and 2007, respondent settled five cases. Although he promptly paid each client the appropriate share of the award, respondent failed to promptly withdraw his fee from the IOLTA. Instead, respondent would

4

withdraw his fee in multiple checks over several weeks or months. Respondent's actions led to commingling of client funds with his personal funds in the IOLTA. For example, respondent settled a matter at the end of April 2006. Throughout May 2006, respondent disbursed funds to his clients and caused several checks of various amounts to be issued. By the end of May, there was still $7,292.64 of respondent's personal funds in the IOLTA. Respondent then deposited a settlement check for another client in early June 2006, resulting in the commingling of funds. Relator contends that commingling occurred again in November and December 2006.[2]

{¶ 13} Respondent explained that he did not immediately remove all his earned attorney fees because he wanted to maintain a buffer in the event that unexpected expenses related to a case arose. Mazanec testified that she could not recall any unexpected expenses arising after settlement during the time she worked for respondent. Respondent also acknowledged that he kept the funds in his IOLTA because it was easier and that once he withdrew funds, it would be considered income. By keeping his fees in his IOLTA, respondent was able to shield the funds from judgment creditors and taxing authorities.

{¶ 14} We accept the board's finding that respondent violated DR 1-102(A)(5) and its counterpart, Prof.Cond.R. 8.4(d); DR 1-102(A)(6) and its counterpart, Prof.Cond.R. 8.4(h); DR 9-102(A); DR 9-102(B)(3); Prof.Cond.R.

---

2. Although respondent was not charged with misuse of client funds, a review of the IOLTA bank statements reveals some disturbing facts during this time period. At the end of September 2006, respondent settled a case for $25,000. According to the disbursement statement, $10,000 was to be paid to the client, $6,000 was to be paid to co-counsel, and $5,000 was to be retained for possible expenses. The remaining $4,000 represented respondent's attorney fees. A check was written to the client for $10,000 on September 30, but the $6,000 co-counsel's fee and the $5,000 amount held for expenses were not paid until February 2007. At the end of October 2006, the balance in respondent's IOLTA was only $3,136.42, when the account should have held at least $11,000. After respondent settled another matter in November, the balance of the IOLTA at the end of the month was $5,468.29. Another settlement in December resulted in the IOLTA having an ending balance of $36,019.01.

1.15(a); Prof.Cond.R. 1.15(a)(2) (a lawyer shall maintain a record for each client on whose behalf funds are held); and Prof.Cond.R. 1.15(a)(3).

## Sanction

{¶ 15} Even before the General Assembly authorized the creation of IOLTAs in R.C. 4705.09, we explained that the "mishandling of clients' funds either by way of conversion, commingling, or just poor management, encompasses an area of the gravest concern of this court in reviewing claimed attorney misconduct." *Columbus Bar Assn. v. Thompson* (1982), 69 Ohio St.2d 667, 669, 23 O.O.3d 541, 433 N.E.2d 602. We have also reiterated a number of times that "it is 'of the utmost importance that attorneys maintain their personal and office accounts separate from their clients' accounts' and that any violation of that rule 'warrants a substantial sanction whether or not the client has been harmed.' " *Disciplinary Counsel v. Wise*, 108 Ohio St.3d 381, 2006-Ohio-1194, 843 N.E.2d 1198, ¶ 15, quoting *Erie-Huron Counties Joint Certified Grievance Commt. v. Miles* (1996), 76 Ohio St.3d 574, 577, 669 N.E.2d 831. See also *Disciplinary Counsel v. Morgan*, 114 Ohio St.3d 179, 2007-Ohio-3604, 870 N.E.2d 1171, ¶ 10; *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 19.

### *Aggravating and Mitigating Circumstances*

{¶ 16} To determine the appropriate sanction, the court looks at a nonexhaustive list of aggravating and mitigating circumstances, which is found in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). In mitigation, the board noted that respondent had no prior disciplinary record, BCGD Proc.Reg. 10(B)(2)(a), and that there was no evidence that a client failed to receive all of money due, BCGD Proc.Reg. 10(B)(2)(h).

{¶ 17} As for aggravating factors, the board determined that respondent displayed a dishonest and selfish motive by using his trust account to keep funds

safe from collection procedures by taxing authorities and judgment creditors. BCGD Proc.Reg. 10(B)(1)(b). It found that respondent's misuse of his trust account continued over several years and represented a pattern of misconduct. BCGD Proc.Reg. 10(B)(1)(c). Finally, respondent did not fully cooperate in the disciplinary process and lied about his reasons for the "unorthodox" manner in which he used his IOLTA. BCGD Proc.Reg. 10(B)(1)(e) and (f).

{¶ 18} Respondent objected to the use of the evidence of tax issues and outstanding judgments and also disputed that he failed to cooperate in the disciplinary process. Based on our review of the record, we agree with the board regarding the mitigating and aggravating factors.

*Comparable Cases*

{¶ 19} For attorneys who have commingled funds or failed to properly maintain their IOLTAs, the sanction has ranged from a stayed six-month suspension, *Disciplinary Counsel v. LaRue*, 122 Ohio St.3d 445, 2009-Ohio-3604, 912 N.E.2d 101, to an indefinite suspension, *Wise*, 108 Ohio St.3d 381, 2006-Ohio-1194, 843 N.E.2d 1198. The panel looked at *Wise, Morgan*, 114 Ohio St.3d 179, 2007-Ohio-3604, 870 N.E.2d 1171, and *Disciplinary Counsel v. Vogtsberger*, 119 Ohio St.3d 458, 2008-Ohio-4571, 895 N.E.2d 158. In *Vogtsberger*, the respondent admitted that he deposited personal funds into his client trust account to shield them from creditors. Id. at ¶ 4. Vogtsberger also had been suspended in May 2006 from the practice of law for failure to comply with continuing legal education ("CLE") requirements. Id. at ¶ 5. Based on these circumstances, we imposed a two-year suspension with one year stayed on conditions. Id. at ¶ 11. The same suspension was given to the respondent in *Morgan,* 114 Ohio St.3d 179, 2007-Ohio-3604, 870 N.E.2d 1171, ¶ 13. Although Morgan did not have a prior disciplinary record, he engaged in a pattern of misconduct and failed to participate in the disciplinary proceedings. Id.

**{¶ 20}** In *Wise*, the respondent failed to maintain client ledgers, records, or receipts for funds deposited into his IOLTA and also used his IOLTA as a personal checking account. 108 Ohio St.3d 381, 2006-Ohio-1194, 843 N.E.2d 1198, ¶ 4-6. Although there was no evidence that a client had been harmed, we determined that Wise's prior disciplinary offenses, his extended misuse of the IOLTA, his multiple overdrafts, and his lack of candor and sense of responsibility warranted an indefinite suspension. Id. at ¶ 16.

**{¶ 21}** Respondent's extended misuse of his IOLTA and his failure to maintain adequate records is similar to the actions in *Wise*. The aggravating factors are also substantially similar; however, respondent does not have any prior disciplinary proceedings. Although we do not believe an indefinite suspension is required, we do find that an actual suspension is warranted.

**{¶ 22}** Respondent is therefore suspended from the practice of law in Ohio for 24 months. We condition respondent's reinstatement on his (1) satisfactorily completing 6 hours of additional CLE in law-office management and accounting and (2) fully paying or providing evidence of a compromise of the following obligations:

**{¶ 23}** (a) Certificate of Judgment No. ST00069639 in the principal sum of $6,717.51;

**{¶ 24}** (b) Certificate of Judgment No. ST98045500 in the principal sum of $5,729.50;

**{¶ 25}** (c) Certificate of Judgment No. ST02085583 in the principal sum of $4,262.04;

**{¶ 26}** (d) Certificate of Judgment No. ST03091227 in the principal sum of $3,761.74;

**{¶ 27}** (e) *West Publishing Corp.* v. *Crosby,* case No. 1999 CVF 013387 judgment in the principal sum of $2,408.44;

{¶ 28} (f) *National City Bank* v. *Crosby,* case No. 01 CVF 647, judgment in the principal sum of $1,349.42;

{¶ 29} (g) Certificate of Judgment No. ST96022309 in the principal sum of $386.54;

{¶ 30} (h) *Imagenet* v. *Crosby,* case No. 2000 CV1 2786, judgment in the principal sum of $362.43;

{¶ 31} (i) Certificate of Judgment No. ST97027119 in the principal sum of $315.37;

{¶ 32} (j) Certificate of Judgment No. ST96022308 in the principal sum of $164.20;

{¶ 33} (k) Certificate of Judgment No. ST99051486 in the principal sum of $142.72; and

{¶ 34} (l) Certificate of Judgment No. ST98040329 in the principal sum of $129.13.

{¶ 35} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

PFEIFER, J., concurs in the suspension of the respondent for 24 months but would stay 12 months of the suspension.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Lester S. Potash, for respondent.

_____