*386 O’Donnell, J.,
dissenting.
{¶ 72} In this case, the majority has indefinitely suspended Percy Squire from the practice of law largely based on its determination that Squire misappropriated insurance proceeds he accepted on behalf of his client, Mark D. Lay. However, a term suspension is consistent with prior sanctions imposed by this court on other attorneys who, like Squire, utilized client funds but had no prior discipline. Therefore, I respectfully dissent from the sanction imposed by the majority and would instead impose a two-year suspension with one year stayed on the conditions that Squire account for any expenditures from Lay’s insurance proceeds, reimburse any unverified expenditures, establish an appropriate accounting system, and commit no further misconduct.
{¶ 73} The record demonstrates that Squire improperly commingled his personal funds with those held in trust for clients, disbursed funds from his client trust account to third parties without notifying the clients or keeping a proper accounting of those transactions, entered into loan agreements and business transactions with clients in which his personal interest and the interest of the client might conflict, without also recommending that the clients obtain independent legal advice, failed to enter into and keep records of fee agreements, misappropriated or converted client funds, and made inconsistent statements to disciplinary authorities.
{¶ 74} I agree with the Board of Commissioners on Grievance and Discipline that Squire’s conduct violated Prof.Cond.R. 1.5(b) (requiring an attorney to communicate the nature and scope of the representation and the basis or rate of the fee and expenses within a reasonable time after commencing the representation unless the lawyer regularly represented the client and will charge the client on the same basis as previously charged), 1.8(a) (prohibiting a lawyer from entering into a business transaction with a client unless the client is advised in writing of the desirability of obtaining independent legal counsel and the terms of the transaction are fair, reasonable, and fully disclosed in a writing signed by the client), 1.15(a) (requiring a lawyer to hold property of clients separate from the lawyer’s own property), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance and to withdraw them only as fees are earned or expenses incurred), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer’s withdrawal from employment), 8.1(a) (prohibiting knowingly making a false statement of material fact in connection with a disciplinary matter), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer’s fitness to practice law).
{¶ 75} I also agree with the majority’s conclusion that Squire lacked a prior disciplinary record and presented evidence of his good character and reputation, *387 see BCGD Proc.Reg. 10(B)(2)(a) and (e), and agree with the findings of the board that Squire acted with a dishonest or selfish' motive, engaged in a pattern of misconduct involving multiple offenses, submitted false evidence and false statements or engaged in other deceptive practices during the disciplinary proceeding, refused to acknowledge the wrongful nature of his conduct, and failed to make restitution to vulnerable clients to whom he potentially caused harm. See BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (f), (g), (h), and (i).
{¶ 76} Nonetheless, I do not concur with the majority that an indefinite suspension is warranted in this case. Rather, I would accept the board’s recommendation that a two-year suspension with one year stayed on conditions is appropriate. That sanction comports with the term sanctions we imposed in similar circumstances in Disciplinary Counsel v. Crosby, 124 Ohio St.3d 226, 2009-Ohio-6763, 921 N.E.2d 225, and Cleveland Bar Assn. v. Mishler, 118 Ohio St.3d 109, 2008-Ohio-1810, 886 N.E.2d 818.

Disciplinary Counsel v. Crosby

{¶ 77} Crosby used his client trust account containing approximately $287,000 for personal and business matters for more than one year. Further, he did not properly train or supervise his paralegal, who was an authorized signer on the account, did not personally reconcile the bank statements, and kept a running total of the earned attorney fees owed to him only in his head. Id. at ¶ 3, 8-9.
{¶ 78} Based upon that conduct, we found that Crosby’s conduct, which occurred both before and after the February 1, 2007 effective date of the Rules of Professional Conduct, had resulted in violations of DR 1-102(A)(6) and Prof. Cond.R. 8.4(h) (both prohibiting conduct that adversely reflects on the lawyer’s fitness to practice law), DR 9-102(A) and/or Prof.Cond.R. 1.15(a) (both requiring a lawyer to hold property of clients separate from the lawyer’s own property), DR 1-102(A)(5) and Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), DR 9-102(B)(3) and 1.15(a) (both requiring a lawyer to hold property of clients separate from the lawyer’s own property), Prof.Cond.R. 5.3(b) (requiring a lawyer to take reasonable efforts to ensure that a nonlawyer employee’s conduct is compatible with the professional obligations of the lawyer), Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), and 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer’s client trust account, setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account). Id. at ¶ 7, 11, and 14.
{¶ 79} As aggravating factors, we found that Crosby had engaged in a pattern of misconduct, had acted with a dishonest and selfish motive by using his client trust account to hide his personal funds from his creditors, and had failed to fully *388 cooperate in the disciplinary process by lying about his reasons for using his client trust account in an unorthodox manner. Id. at ¶ 17. There was no evidence tending to demonstrate that any clients suffered any financial losses as a result of Crosby’s misconduct. Id. at ¶ 16.
{¶ 80} Observing that Crosby did not have a prior disciplinary record, we concluded that a 24-month suspension was adequate to protect the public and conditioned Crosby’s reinstatement on the completion of 12 hours of continuing legal education in law-office management and accounting and the payment in full or evidence of a compromise of a number of monetary judgments obtained against Crosby. Id. at ¶ 22.

Cleveland Bar Assn. v. Mishler

{¶ 81} In Cleveland Bar Assn. v. Mishler, 118 Ohio St.3d 109, 2008-Ohio-1810, 886 N.E.2d 818, ¶ 5, a client paid Mishler $17,600 in connection with an employment-discrimination suit, though Mishler had agreed to pursue the case for $10,000. Mishler later settled the client’s claim for $7,500 without the client’s knowledge or consent, signed the client’s name to the settlement check without authorization, failed to give the client any of the settlement proceeds, and also failed to return any of the client’s unexpended funds. Id. at ¶ 20.
{¶ 82} There, we determined that Mishler had violated DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice), 1-102(A)(6) (prohibiting conduct that adversely reflects on the lawyer’s fitness to practice law), 7-101(A) (prohibiting a lawyer from intentionally failing to seek a client’s lawful objectives), 7-101(A)(3) (prohibiting a lawyer from damaging or prejudicing a client during representation), 9-102(B)(l) (requiring a lawyer to promptly notify a client of received funds belonging to the client), and 9-102(B)(4) (requiring a lawyer to promptly deliver requested funds that the client is entitled to receive). Id. at ¶ 23.
{¶ 83} With respect to a second client, we found that Mishler had failed to reliably account for how he earned or appropriately spent $5,000 in client funds for an employment-discrimination claim for which he did not commit any fee agreement to writing and had no records of the time he had spent on the case. Id. at ¶ 24-25, 28-29. We further found that his conduct was prejudicial to the administration of justice and adversely reflected on his fitness to practice law, and that by retaining the client’s funds, he had collected a clearly illegal or excessive fee. Id. at ¶ 29. Although Mishler eventually refunded money to both clients, we found that the mitigating effect of the refunds was diminished by the fact that Mishler had waited until just before the panel hearing to make them. Id. at ¶ 41.
*389 {¶ 84} In sanctioning Mishler, we noted that the presumptive sanction for misappropriation is disbarment and that misconduct involving dishonesty, fraud, deceit, or misrepresentation requires a period of actual suspension from the practice of law. Id. at ¶ 44. Recognizing his more than 30 years of practice without incident and letters from attorneys and a former colleague attesting to his good character, we concluded that an extended suspension with provisions for a partial stay and probation would be in the best interest of the public and the respondent, and we therefore suspended him from the practice of law for two years and stayed the final year on the conditions that he (1) not commit any other ethical violations and (2) fully account to the affected clients for his fees and expenses and refund any unverified fees and expenses owed to them with interest at the statutory rate for judgments. In addition to imposing a one-year period of probation upon reinstatement, we required Mishler to establish an office accounting system to accurately track the receipt and disbursement of client funds. Id. at ¶ 45, 47.
{¶ 85} Squire’s commingling of personal and client funds and his failure to maintain adequate records of those funds in his possession are most comparable to the misconduct in Crosby and Mishler. In the instant case, Squire’s conduct with respect to the insurance proceeds occurred during only a two-month period. Although Squire committed other acts of misconduct between 2007 and 2008, he has practiced law for nearly 30 years without incident.
{¶ 86} The primary purpose of the disciplinary process in Ohio is to “protect clients and the public, to ensure the administration of justice, and to maintain the integrity of the legal profession.” Disciplinary Counsel v. Hunter, 106 Ohio St.3d 418, 2005-Ohio-5411, 835 N.E.2d 707, ¶ 32. In my view, this purpose would be served by ordering a term sanction with conditions that require Squire to account for any expenditures from Lay’s insurance proceeds, reimburse any unverified expenditures, and establish an appropriate accounting system. Thus, I would impose a two-year suspension with one year stayed on the conditions that within 30 days, Squire (1) fully account to his client and any related party in interest for expenditures made from the insurance proceeds Squire accepted on behalf of Lay, (2) submit documentation satisfactory to relator that he has paid restitution for any unverified fees, loans, or expenses, with interest at the statutory rate, (3) serve one year of monitored probation during the stayed portion of his suspension pursuant to Gov.Bar R. V(9), (4) establish an office accounting system to accurately track receipts, which will be subject to review and monitoring as part of his probation, and (5) commit no further misconduct. Accordingly, I dissent.
Pfeifer and Stewart, JJ., concur in the foregoing opinion.
*390 Jonathan E. Coughlan, Disciplinary Counsel, and Karen H. Osmond, for relator.
Percy Squire, pro se.