COLUMBUS BAR ASSOCIATION *v*. KING.

[Cite as *Columbus Bar Assn. v. King,* **132 Ohio St.3d 501, 2012-Ohio-873.**]

*Attorneys—Misconduct—Multiple violations of Rules of Professional Conduct, including violations relating to client trust account, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and failing to disclose to clients that attorney did not carry professional-liability insurance—Two-year suspension.*

(No. 2011-1418—Submitted October 5, 2011—Decided March 6, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio, No. 10-062.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Ray Jetmore King of Gahanna, Ohio, Attorney Registration No. 0020733, was admitted to the practice of law in Ohio in 1974. Relator, Columbus Bar Association, and respondent stipulated to the facts and misconduct alleged in relator's amended complaint. A three-member panel of the Board of Commissioners on Grievances and Discipline heard testimony in the case, issued findings of fact and conclusions of law, and ultimately recommended that we suspend respondent's license to practice law for two years. The board adopted the panel's report in full.

**{¶ 2}** The parties did not object to the board's report, and we ordered respondent to show cause why we should not adopt the board's report and recommendation. On review, we find that respondent committed the stipulated violations of the Rules of Professional Conduct and hereby suspend respondent's license to practice law for two years.

**Misconduct**

*Counts One through Three*

{¶ 3}   Respondent's stipulated misuse of his client trust account is the basis of these three counts of misconduct.   Respondent stipulated that he had deposited into his client trust account money from, or payable to, two clients—a corporation and an estate.  A short time later, respondent began using both clients' funds to pay his personal and office expenses, and he continued to do so for several months.  This frequently resulted in a balance in the client trust account that was less than the amount held in trust for these clients.  To remedy this, respondent, on several occasions, deposited personal funds into his client trust account.  Three of these deposits exceeded $15,000.

{¶ 4}   All the debts of the estate in Count Two were eventually paid in full.   The $100,000 belonging to the corporate client in Count One was also repaid, but only after the client's unsuccessful efforts to secure a return of its money prompted it to file a grievance against respondent.  Respondent initially attempted to justify his failure to promptly return these funds by alleging that the amount owed to the client was in dispute and that he had always been willing and able to remit the amount that was not being contested.  Respondent later stipulated, however, that the disputed amount, if any, was minimal.  He also stipulated that his professed ability to repay these funds at any time was untrue, because the balance in the client trust account was often insufficient to do so. Finally, respondent admitted that his delay in returning these funds financially harmed his client.

{¶ 5}   Respondent further stipulated that he did not properly maintain and oversee his client trust account.  In addition to the improprieties just discussed, respondent's recordkeeping was haphazard.   His admitted failure to keep an individual client ledger for each client made it extremely difficult to determine the clients to which various withdrawals and deposits pertained.

**{¶ 6}** Respondent has stipulated that his misuse of his client trust account constituted violations of Prof.Cond.R. 1.15(a) (failure to maintain complete records of clients' funds), 1.15(c) (failure to keep client funds separate from those of the lawyer),[1] and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). He has also stipulated that in Counts One and Two, he did not promptly return his clients' money, in violation of Prof.Cond.R. 1.15(d) (failure to promptly deliver funds that the client is entitled to receive). Respondent lastly concedes that, in Count One, he improperly held funds belonging to his client and attempted to defend his action by fabricating a fee dispute. Respondent has stipulated that this conduct violated Prof.Cond.R. 1.15(e) (improperly holding funds in dispute) and 8.4(c).

**{¶ 7}** The board concluded that respondent had engaged in all of the stipulated misconduct and had committed all of the stipulated violations. We agree and accept these findings of misconduct.

*Count Four*

**{¶ 8}** Respondent stipulated that he did not maintain malpractice insurance throughout much of 2009 and 2010 and did not inform many of his clients. Respondent stipulated that these actions violated Prof.Cond.R. 1.4(c) (failure to notify clients in writing that the attorney does not maintain professional-liability insurance).

**{¶ 9}** The board concluded that respondent had engaged in all of the stipulated misconduct and had committed the stipulated violation. We agree and accept these findings.

---

1. A failure to keep client funds separate from those of the lawyer falls under Prof.Cond.R. 1.15(a), not 1.15(c). We consider the error in citation within the record to be inadvertent.

*Count Five*

**{¶ 10}** Respondent stipulated that the misconduct set forth in Counts One through Four constituted a violation of Prof.Cond.R. 8.4(h) (a lawyer shall not engage in conduct that adversely reflects upon the fitness to practice law).

**{¶ 11}** The board concluded that respondent had engaged in the stipulated misconduct and had violated Prof.Cond.R. 8.4(h). We agree and accept this finding regarding misconduct.

## Sanction

**{¶ 12}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated by the lawyer in question and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. *Lake Cty. Bar Assn. v. Troy*, 121 Ohio St.3d 51, 2009-Ohio-502, 901 N.E.2d 809, ¶ 11.

**{¶ 13}** In this case, the board found four aggravating factors. It found that respondent had (1) submitted false statements during the disciplinary investigation, (2) acted with a dishonest and selfish motive, (3) engaged in a pattern of misconduct, and (4) committed multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (f). It also found one mitigating factor—the absence of any prior disciplinary record. *See* BCGD Proc.Reg. 10(B)(2)(a). The board, however, did not agree with the parties' stipulation that respondent's cooperation in the disciplinary proceeding was an additional mitigating factor. *See* BCGD Proc.Reg. 10(B)(2)(d). The board felt that respondent's eventual cooperation in the disciplinary process was outweighed by his fabrication of a fee dispute and other misrepresentations that respondent initially made in response to the grievance filed against him in Count One.

**{¶ 14}** The board recommended that respondent's license to practice law be suspended for two years and that reinstatement be premised on the following conditions: (1) respondent's completion of a minimum of 12 hours of continuing legal education related to accounting and law-practice management and (2) monitored probation for one year following reinstatement. The board further recommended that the costs of these proceedings be taxed to respondent.

**{¶ 15}** We accept the board's recommendation. In reviewing sanctions in similar cases regarding misuse of client funds, we find *Disciplinary Counsel v. Crosby*, 124 Ohio St.3d 226, 2009-Ohio-6763, 921 N.E.2d 225, to be instructive. There, as here, the attorney used his client trust account to pay for personal and business expenses, commingled personal funds with those held in trust for his clients, and did not maintain accurate records for funds deposited into his client trust account. In imposing a two-year sanction, we stressed:

> Even before the General Assembly authorized the creation of IOLTAs in R.C. 4705.09, we explained that the "mishandling of clients' funds either by way of conversion, commingling or just poor management, encompasses an area of the gravest concern of this court in reviewing claimed attorney misconduct." *Columbus Bar Assn. v. Thompson* (1982), 69 Ohio St.2d 667, 669, 23 O.O.3d 541, 433 N.E.2d 602. We have also reiterated a number of times that "it is 'of the utmost importance that attorneys maintain their personal and office accounts separate from their clients' accounts' and that any violation of that rule 'warrants a substantial sanction whether or not the client has been harmed.' " *Disciplinary Counsel v. Wise*, 108 Ohio St.3d 381, 2006-Ohio-1194, 843 N.E.2d 1198, ¶ 15, quoting *Erie-Huron Counties Joint Certified Grievance Commt. v. Miles* (1996), 76 Ohio St.3d 574, 577, 669 N.E.2d 831.

Id. at ¶ 15.

**{¶ 16}** In the case at bar, respondent not only committed the same misconduct as that in *Crosby*, he additionally fabricated a fee dispute in order to justify his failure to promptly return his corporate client's money. For these reasons, we find that a lesser sanction is inappropriate. Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years with reinstatement contingent upon his completion of a minimum of 12 hours of continuing legal education related to accounting and law-practice management in addition to the continuing-legal-education requirements of Gov.Bar R. X, followed by a one-year period of monitored probation. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

————————————

Mazanee, Raskin & Ryder Co., L.P.A., and Michael S. Loughry; and Bruce A. Campbell, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

Ray Jetmore King, pro se.

————————————