DISCIPLINARY COUNSEL *v*. CROSBY.

[Cite as *Disciplinary Counsel v. Crosby,* **132 Ohio St.3d 387, 2012-Ohio-2872.**]

*Attorneys—Misconduct—Multiple violations of the Disciplinary Rules—Previous ongoing license suspensions—Disbarment.*

(No. 2011-1453—Submitted December 7, 2011—Decided June 28, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-091.

_____

**Per Curiam**.

**{¶ 1}** Respondent, William Matthew Crosby of Cleveland, Ohio, Attorney Registration No. 0002451, was admitted to the practice of law in Ohio in 1982. In 2009, we suspended Crosby from the practice of law in Ohio for 24 months, with reinstatement conditioned upon his satisfaction of numerous judgments. *Disciplinary Counsel v. Crosby,* 124 Ohio St.3d 226, 2009-Ohio-6763, 921 N.E.2d 225, ¶ 22-34. We have since suspended Crosby's license to practice law for an interim period pursuant to Gov.Bar R. V(5)(A)(3), due to his felony conviction. *In re Crosby,* 127 Ohio St.3d 1424, 2010-Ohio-5295, 936 N.E.2d 72. In addition, Crosby's license is under suspension because he has failed to register as an attorney for the current biennium. *In re Attorney Registration of Crosby*, 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.2d 310.

**{¶ 2}** The Board of Commissioners on Grievances and Discipline recommends that we disbar Crosby, based on his repeated misconduct and multiple violations of the Code of Professional Responsibility.[1] We agree that

---

1. Disciplinary counsel charged Crosby with misconduct under the Disciplinary Rules because he allegedly committed the acts before February 1, 2007, the effective date of the Rules of Professional Conduct.

Crosby committed professional misconduct as found by the board, and we accept the recommendation of disbarment.

{¶ 3} In January 2011, relator, disciplinary counsel, filed a five-count amended complaint against Crosby, alleging multiple violations of the Code of Professional Responsibility. Crosby answered, and a panel of the board held a hearing on the complaint in June 2011 and proceeded on the evidence presented there, as well as on the stipulated exhibits and facts. After the hearing, the panel made findings of fact and conclusions of law and recommended disbarment. The board adopted the panel's report in its entirety. Crosby filed objections to the board's recommendation, asserting that his misconduct warrants only a two-year suspension, to run concurrently with the suspensions already imposed. We overrule Crosby's objections and adopt the board's recommendation to disbar.

**Misconduct**

*Count One (The Tax Matter)*

{¶ 4} The parties stipulated that in 2010, Crosby pled guilty to federal charges of attempted income-tax evasion, a felony, having failed to file tax returns from 2001 through 2006. As part of his sentence, the court ordered Crosby to pay $314,637 to the IRS. *United States v. Crosby*, N.D.Ohio No. 1:10cr253 (Sept. 23, 2010). Crosby stipulates that he has not made any restitution.

{¶ 5} The parties further stipulated that Crosby used his Interest on Lawyers' Trust Accounts ("IOLTA account") to hide his income from the IRS. They agree that Crosby violated DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude), 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

*Count Two (The J.R. and B.P. Matter)*

**{¶ 6}** In June 2002, Crosby filed a lawsuit against the Catholic Diocese of Cleveland and others ("the Catholic Church") on behalf of J.R. and B.P., who alleged that they had been sexually abused by a Catholic priest. Crosby and J.R. agreed to a contingent fee, but because of a dispute over the timing of a handwritten revision to the agreement, the percentage agreed to is unclear. Jeffrey Anderson, an attorney from Minnesota, served as co-counsel. Crosby failed to advise J.R. and B.P. that he did not maintain malpractice insurance, failed to provide them with a written notice containing this information, and did not obtain their signatures on any such written notice.

**{¶ 7}** In January 2003, J.R., represented by different counsel, filed for bankruptcy and listed the lawsuit against the Catholic Church as an asset. The bankruptcy court eventually issued an order discharging J.R.'s debts. After this discharge, Crosby settled the lawsuit with the Catholic Church on behalf of J.R. for $175,000. Anderson instructed Crosby to prorate the costs and expenses among their clients. When Crosby presented the settlement agreement to J.R., he urged J.R. to sign it without reading it, so J.R. was unaware that his legal matter had been settled for $175,000.

**{¶ 8}** Crosby received the $175,000 settlement check payable to J.R. and Crosby's law firm. Although Crosby did not have a power of attorney from J.R. or permission to sign, Crosby signed J.R.'s name "(per POA)" on the back of the check. Crosby failed to prepare a settlement distribution sheet for J.R., but he charged J.R. a 40 percent contingent fee, plus $10,000 for expenses. Crosby did not promptly disburse any of the remaining $95,000 settlement funds to J.R.

**{¶ 9}** Crosby also failed to inform the bankruptcy court about the J.R. settlement or seek bankruptcy court approval for the settlement agreement or the attorney fees. After J.R.'s bankruptcy attorney advised the court that J.R.'s "case against the diocese has apparently been settled for $175,000," Crosby disbursed

$5,000 to J.R. from his settlement funds, identifying the check as a "net distribution exemption." Two months later, Crosby disbursed $10,000 to J.R. from his settlement funds in his IOLTA account. Eight months after that, Crosby disbursed the remaining $80,000 to J.R., identifying this payment as the "final distribution."

{¶ 10} Crosby failed to turn over funds and provide documentation to the bankruptcy court regarding the J.R. settlement. As a result, the bankruptcy trustee filed a complaint for monetary damages against Crosby and J.R., seeking the remaining $80,000 in settlement funds paid to J.R. and the $17,500 in settlement funds paid to Crosby as attorney fees, and the court revoked J.R.'s discharge of his debts. Two years later, the bankruptcy court granted summary judgment in favor of the trustee and against Crosby and J.R., jointly and severally, for $35,257.16 and against Crosby for $17,500.

{¶ 11} As to Count Two, the panel concluded and the board agreed that Crosby's conduct violated DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 1-104 (requiring a lawyer to inform a client if the lawyer does not maintain professional-liability insurance), 7-102(A)(3) (prohibiting a lawyer from concealing or knowingly failing to disclose that which he is required by law to reveal), 7-102(A)(7) (prohibiting a lawyer from counseling or assisting his client in conduct that the lawyer knows to be illegal or fraudulent), and 9-102(B)(3) (requiring a lawyer to maintain complete records of all funds, securities, and other properties of a client in the possession of the lawyer and render appropriate accounts to his client regarding them).

*Count Three (The IOLTA-Account Matter)*

{¶ 12} In July 2003, Crosby deposited a check for $175,000, representing J.R.'s settlement proceeds, into his IOLTA account. After deducting a 40 percent contingent fee and a $10,000 expense reimbursement, Crosby owed J.R. $95,000. The next month, Crosby disbursed $5,000 to J.R. from this settlement. After J.R.

4

cashed the check, Crosby's IOLTA account should have held a balance of at least $90,000, reflecting the funds still owed to J.R. Instead, the balance in Crosby's IOLTA account was $82,959.84.

{¶ 13} Two months later, Crosby disbursed an additional $10,000 to J.R. Crosby's IOLTA account should have then held a balance of at least $80,000, reflecting the funds still owed to J.R.; however, the balance in Crosby's IOLTA account was $4,619.84.

{¶ 14} In May 2004, Crosby's IOLTA account balance was $43.52 when he deposited $500,001 in unrelated settlement proceeds, which he used to disburse the remaining $80,000 to J.R. Because Crosby's IOLTA account balance was below the amount of settlement funds owed to J.R. and being purportedly held by Crosby in his IOLTA account, Crosby misappropriated funds belonging to J.R.

{¶ 15} As to this count, the panel found and the board agreed that Crosby's conduct violated DR 1-102(A)(4), 1-102(A)(6), and 9-102(B)(3).

*Count Four*

*(The J.R., B.P., M.A., H.F., and J.G. Matter)*

{¶ 16} Crosby undertook representation of J.R., B.P., M.A., H.F., and J.G., who alleged that they had been sexually abused by a Catholic priest, in claims against the Catholic Church. Crosby entered into a contingent-fee agreement with J.G. and M.A. for this representation. This agreement advised them that Minnesota attorney Jeffrey Anderson would be acting as co-counsel. When the defendants and Crosby's clients settled the lawsuit, Anderson provided Crosby with a bill for $15,579.21 in costs and expenses.

{¶ 17} Because Crosby and Anderson were involved in representing several parties against the Catholic Church, Anderson advised Crosby that his costs and expenses should be prorated among the plaintiffs. In June 2003, when Crosby received $800,000 in settlement checks for the five clients, he prepared a

settlement-distribution sheet for J.G. and M.A., which stated that each paid a 40 percent contingent fee and $5,000 for his share of case-related expenses. J.G. and M.A. signed these statements. Ultimately, Crosby's five clients paid $30,000 for expenses, twice as much as documented.

{¶ 18} As to this count, the panel concluded and the board agreed that Crosby's misconduct violated DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 1-104(A), 7-102(A)(3), 9-102(B)(3), and 9-102(B)(4) (requiring a lawyer to promptly deliver to the client the funds, securities, or other properties to which the client is entitled).

*Count Five (The Malpractice Matter)*

{¶ 19} In 2009, Crosby was cross-examined in a malpractice lawsuit filed against him by J.R. Crosby testified that J.R. had given Crosby a power of attorney and that the $175,000 settlement check was deposited pursuant to that power of attorney. Crosby also testified that he kept $80,000 of the settlement proceeds owed to J.R. in his IOLTA account for almost one year because "that's where [J.R.] directed [Crosby] to maintain the funds."

{¶ 20} When J.R. and his legal counsel filed a grievance with disciplinary counsel alleging that Crosby had engaged in ethical misconduct in the handling of the lawsuit for J.R. and the other four clients, Crosby replied that he "did not advise [J.R.] to make misrepresentations to the bankruptcy court" and that "[all five clients] received every dollar due under their settlement agreements." He further testified that he had "had no involvement with nor further notice of any events involving the [J.R.] bankruptcy" beyond the fact that he "understood that under bankruptcy law [J.R.] was entitled to the first $5,000 of his proceeds, and probably additional proceeds once the question of his 'exemption under Ohio law' was settled." Crosby added that he had "consulted with the Cleveland bankruptcy attorney about this matter, and mentioned to J.R. that he may want to speak with this lawyer."

**{¶ 21}** As to Count Five, the panel and board agreed that Crosby's misconduct violated DR 1-102(A)(4), 1-102(A)(5), and 1-102(A)(6), and Gov.Bar R. V(4)(G) (requiring cooperation with disciplinary counsel's investigation of misconduct).

### Aggravation and Mitigation

**{¶ 22}** The panel and board found the following aggravating factors: prior disciplinary offense; dishonest or selfish motive; pattern of misconduct; multiple offenses; false statements made during the disciplinary process; and vulnerable clients, who had apparently been abused not only by a priest, but by the lawyer they trusted to right the wrongs that had been done to them as children. And as to J.R., the panel and board found that Crosby's conduct had caused him to lose his bankruptcy protection. Finally, Crosby still owes the full restitution amount of $314,637 to the IRS. BCGD Proc.Reg. 10(B)(1)(a), (b), (c), (d), (f), (h), and (i).

**{¶ 23}** The panel and board found the following mitigating factors: imposition of other penalties or sanctions and alcohol dependency. BCGD Proc.Reg. 10(B)(2)(f) and (g). However, Crosby provided no competent evidence that his alleged alcohol dependency contributed to cause the misconduct charged here.

### Sanction

**{¶ 24}** Disciplinary counsel recommends that Crosby be disbarred. The panel and board also recommend disbarment. Crosby seeks a two-year suspension, to run concurrently with his other suspensions, and asks that treatment for alcohol abuse and mental illness be ordered.

**{¶ 25}** Crosby argues that permanent disbarment would exceed the penalty that this court has imposed in similar cases. When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in other cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 26} Crosby argues that this court has routinely applied one-year suspensions, with credit for the period of any interim suspension, to attorneys who were convicted of tax evasion or fraud. However, with regard to Count One alone, Crosby's misconduct warrants disbarment. Crosby failed to file tax returns or pay his personal taxes for six years, intentionally used his IOLTA account to conceal assets from the IRS, and was convicted of felony attempted tax evasion.

{¶ 27} Similar cases have resulted in disbarment. In *Dayton Bar Assn. v. Schram*, 122 Ohio St.3d 8, 2009-Ohio-1931, 907 N.E.2d 311, Schram failed to file income-tax returns for 20 years, failed to pay federal withholding taxes for her employees, and was convicted of felony tax crimes. *Id*. at ¶ 9. Like Crosby, Schram had a prior disciplinary record and had failed to make complete restitution to the IRS. *Id*. at ¶ 12. This court disbarred Schram. *Id*. at ¶ 13. Although Crosby's failure to file federal income-tax returns and failure to pay federal income taxes was for six years rather than 20, Crosby's other aggravating factors make disbarment appropriate.

{¶ 28} With regard to his other four counts, Crosby stipulated that he misappropriated nearly $80,000 in J.R.'s funds, and the board found that Crosby had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation when he charged his five clients $30,000 in expenses that in fact totaled around $15,000. As noted by disciplinary counsel, the presumptive sanction for misappropriation of client funds is disbarment. *See, e.g*., *Lorain Cty. Bar Assn. v. Fernandez*, 99 Ohio St.3d 426, 2003-Ohio-4078, 793 N.E.2d 434, ¶ 9; *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 27; and *Cleveland Bar Assn. v. Belock*, 82 Ohio St.3d 98, 100, 694 N.E.2d 897 (1998) (public confidence in the judicial system and the bar requires the strictest

discipline for misappropriation cases, and the appropriate discipline when a lawyer converts client funds is disbarment).

### Conclusion

**{¶ 29}** Crosby lied to the IRS, the bankruptcy trustee, his clients, the courts, and disciplinary counsel. His pervasive dishonesty, combined with his misappropriation of client funds, compels us to permanently disbar Crosby from the practice of law in Ohio.

**{¶ 30}** Costs are taxed to Crosby.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger Jr., Assistant Disciplinary Counsel, for relator.

Dworken & Bernstein Co., L.P.A., and Patrick J. Perotti, for respondent.

_____