ERIE-HURON COUNTIES JOINT CERTIFIED

GRIEVANCE COMMITTEE *v*. DERBY.

[Cite as *Erie-Huron Counties Joint Certified Grievance Commt. v. Derby,*

131 Ohio St.3d 144, 2012-Ohio-78.]

*Attorney misconduct, including failing to act with reasonable diligence in representing clients, failing to keep clients reasonably informed, and failing to inform clients that the attorney lacks professional-liability insurance—Two-year suspension with 18 months stayed on conditions.*

(No. 2011-1036—Submitted August 8, 2011—Decided January 17, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-061.

_____

**Per Curiam**.

{¶ 1}  Respondent, Charles Paul Derby of Norwalk, Ohio, Attorney Registration No. 0055272, was admitted to the practice of law in Ohio in 1991.  In August 2010, relator, Erie-Huron Counties Joint Certified Grievance Committee, charged Derby with multiple violations of the Rules of Professional Conduct arising from his neglect of eight client bankruptcy matters, failure to reasonably communicate with his clients, and failure to notify his clients that he did not maintain malpractice insurance.

{¶ 2}  The evidence in this case includes the parties' stipulations of fact, the testimony of five of the clients affected by Derby's misconduct, the testimony of Stephanie Krznarich, the clinical director of the Ohio Lawyers Assistance Program ("OLAP"), and Derby's admission that he committed the charged misconduct.

**{¶ 3}** The panel and board accepted the parties' stipulations, made findings of fact and misconduct, and recommend that we suspend Derby from the practice of law for 18 months, with 12 months stayed on conditions. We adopt the board's findings of fact and misconduct, but in light of the aggravating factors in this case and Derby's need for ongoing mental-health and substance-abuse treatment, we conclude that a two-year suspension with 18 months stayed on the conditions recommended by the board, followed by two years of monitored probation, is the appropriate sanction.

### Factual Background and Misconduct

**{¶ 4}** Derby began his solo law practice in 1995, and at the time of the misconduct, approximately one-half of his practice involved personal bankruptcies. In 2004, his wife began assisting him in the management of his practice, serving as his paralegal and secretary. Beginning in 2006, Derby faced significant stress in his personal life—his wife was gravely ill, and he became her primary caregiver. Derby testified that when his wife died in May 2007, he mentally "shut down to a degree" and began to experience severe financial problems; he lost his home to foreclosure in 2008. Derby contacted OLAP in April 2008 and entered into a three-year OLAP contract the following month to address his diagnoses of "alcohol dependence" and "adjustment disorder with depressed mood and disturbance in conduct."

**{¶ 5}** Derby admitted that he had engaged in a pattern of misconduct from late 2007 through 2009 and that he had committed all of the charged ethical violations. Although Derby's clients had paid him substantial retainers and filing fees, he neglected eight separate personal-bankruptcy matters and failed to keep his clients reasonably informed or to reply to their repeated requests for information. In four of the matters, Derby failed to file bankruptcy petitions in a timely manner. In the remaining four matters, the bankruptcy cases were dismissed because he did not file all of the necessary documentation. In two of

2

the matters, the bankruptcy court ordered Derby to disgorge fees and expenses that he had received from his clients. Derby also failed to provide notice, in a writing signed by his clients, that he did not maintain malpractice insurance.

**{¶ 6}** Derby's clients testified that his failure to handle their legal matters in a timely and competent manner caused them personal stress and frustration because they continued to receive calls from creditors seeking payment of the debts they sought to discharge in bankruptcy. At least one client was afraid that her wages would be garnished and that as a result, she would lose her job.

**{¶ 7}** Derby has admitted, and the board has found, that he committed multiple violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), and 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance).

### Sanction

**{¶ 8}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 9}** As aggravating factors, the board found that Derby had engaged in a pattern of misconduct involving multiple offenses, that his clients were vulnerable and were harmed by his misconduct, and that Derby had failed to make

restitution until the bankruptcy court ordered him to do so in two cases and relator counseled him to do so in the remaining cases. See BCGD Proc.Reg. 10(B)(1)(c), (d), (h), and (i).

{¶ 10} As mitigating factors, the board found that Derby does not have a prior disciplinary record, made full and free disclosure to the board, cooperated in the disciplinary process, and acknowledged the wrongful nature of his conduct. BCGD Proc.Reg. 10(B)(2)(a) and (d). At relator's urging, by the date of the disciplinary hearing, Derby had worked with grievants in seven of the eight affected client matters to either refund their money or complete their bankruptcy proceedings. With respect to the remaining grievants, Tammy and Brian Harp, he has returned $600 of the $1,000 they advanced to him and has given them a promissory note for the remaining $400. He testified that he is working manual-labor jobs to raise the money to satisfy that obligation. Therefore, the board found that Derby had made a good-faith effort to make restitution or rectify the consequences of his misconduct. See BCGD Proc.Reg. 10(B)(2)(c).

{¶ 11} Although the board determined that neither Derby's alcohol abuse nor his depression qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g), it nonetheless accorded some mitigating effect to his recovery efforts.

{¶ 12} In considering the proper sanction for Derby's misconduct, the board cites *Erie-Huron Grievance Commt. v. Stoll*, 127 Ohio St.3d 290, 2010-Ohio-5985, 939 N.E.2d 166, and *Dayton Bar Assn. v. Hunt*, 127 Ohio St.3d 390, 2010-Ohio-6148, 939 N.E.2d 1247. In *Stoll*, the attorney had failed to file the documents necessary to close 20 separate probate estates, an accounting in a guardianship matter, and a settlement entry in a bankruptcy proceeding. *Stoll* at ¶ 3-4. Although Stoll presented evidence that he suffered from depression and anxiety, he contacted OLAP only days before his disciplinary hearing and did not establish that his conditions were causally related to his misconduct. Id. at ¶ 9.

To ensure that Stoll was able to successfully manage his illness, we imposed a two-year suspension with one year conditionally stayed, and we conditioned his reinstatement upon the submission of medical proof establishing his ability to competently and ethically practice law and on his continued compliance with his OLAP contract. Id. at ¶ 13-14. We also ordered that upon reinstatement, he serve a two-year period of monitored probation. Id. at ¶ 14.

{¶ 13} In *Hunt*, however, we imposed a six-month suspension based upon the attorney's neglect of a single client matter, his failure to keep that client reasonably informed about the status of the matter, and his failure to respond to the relator's investigation of a separate client grievance. *Hunt*, ¶ 5-8, 11.

{¶ 14} Here, the board found that Derby's conduct was more egregious than that of Hunt and less egregious than that of Stoll, and therefore recommends that we suspend him from the practice of law for 18 months with 12 months stayed on the conditions that he (1) renew his OLAP contract when it expires, for the period of time recommended by OLAP, (2) fully comply with all OLAP recommendations, including regular attendance at Alcoholics Anonymous meetings, (3) make full restitution to his former clients Tammy and Brian Hart, and (4) commit no further misconduct. Additionally, the board recommends that Derby's reinstatement be conditioned upon the certification of a qualified psychiatrist that he is able to return to the competent, ethical, and professional practice of law, and that during the period of his stayed suspension and for two years following that suspension, Derby be under the supervision of a monitor appointed by relator.

{¶ 15} We find, however, that respondent's conduct is more comparable to that of Stoll and to the attorney in *Disciplinary Counsel v. Clark* (1997), 78 Ohio St.3d 302, 302-303, 677 N.E.2d 1181. In *Clark*, we imposed a two-year suspension with one year stayed on conditions, citing the "repetitive nature" of Clark's violations, involving the acceptance of retainers from *two* clients, failure

to perform any meaningful work, and failure to return the retainers until just before his disciplinary hearing. Due to aggravating factors present in this case and Derby's need for ongoing mental-health and substance-abuse treatment, we conclude that a two-year suspension with the final 18 months stayed on the conditions recommended by relator, followed by two years of monitored probation, is necessary to protect the public.

{¶ 16} Accordingly, we suspend Charles Paul Derby from the practice of law in Ohio for two years, with the final 18 months stayed on the conditions that he (1) immediately renew his OLAP contract, if he has not already done so, for the period of time recommended by OLAP, (2) fully comply with all OLAP recommendations, including regular attendance at Alcoholics Anonymous meetings, (3) make full restitution to his former clients Tammy and Brian Hart, and (4) commit no further misconduct. Derby's reinstatement will be conditioned upon the certification of a qualified psychiatrist that he is able to return to the competent, ethical, and professional practice of law. During the period of his stayed suspension and for two years following that suspension, he must submit to the supervision of a monitor appointed by relator in accordance with Gov.Bar R. V(9). If Derby fails to comply with the conditions, the stay will be lifted and he will serve the entire two-year suspension. Costs are taxed to Derby.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

James J. Martin and Richard B. Hauser, for relator.

Charles Paul Derby, pro se.

_____