CLEVELAND METROPOLITAN BAR ASSOCIATION *v*. WESTFALL.

[Cite as *Cleveland Metro. Bar Assn. v. Westfall,*

134 Ohio St.3d 127, 2012-Ohio-5365.]

*Attorneys—Misconduct—Multiple violations of Rules of Professional Conduct—*
*Failure to cooperate—Two-year suspension from practice of law, six*
*months stayed on conditions.*

(No. 2012-1003—Submitted September 12, 2012—Decided November 21, 2012.)

ON CERTIFIED REPORT of the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 11-063.

_____

McGEE BROWN, J.

{¶ 1} Respondent, James W. Westfall Jr. of Cleveland, Ohio, Attorney Registration No. 0029420, was admitted to the practice of law in Ohio in 1977. On November 11, 2011, relator, Cleveland Metropolitan Bar Association, filed an amended, seven-count complaint against Westfall charging him with violations of the Ohio Rules of Professional Conduct. A panel of the Board of Commissioners on Grievances and Discipline conducted a hearing and heard testimony from several witnesses, including Westfall.

{¶ 2} The panel found that Westfall violated the following rules: Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.9(a) (requiring a lawyer to obtain informed consent of a client before representing another in the same or a substantially related matter adversely affecting the client),1.16(d)

(requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), 5.3(b) (requiring a lawyer to take reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer), 7.1 (prohibiting a lawyer from using a false, misleading, or nonverifiable communication about the lawyer or the lawyer's services), 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation). The board agreed with all of the above findings by the panel, with the exception of the finding that Westfall had violated Prof.Cond.R. 1.9(a), which the board found was not supported by clear and convincing evidence.

{¶ 3} The panel recommended that Westfall be suspended from the practice of law for two years, with six months stayed on certain conditions. The board agreed with the panel's findings and conclusions, but recommended a two-year suspension with reinstatement contingent on the conditions named by the panel.

{¶ 4} After reviewing the record, we adopt the board's recommended sanction and suspend Westfall for two years, with reinstatement contingent on several conditions.

### *Misconduct*

*Count One: McCafferty Grievance*

{¶ 5} In late 2008, Westfall agreed to represent Diana S. McCafferty and her then husband, Michael J. McCafferty, in a Chapter 7 bankruptcy, for fees and

costs of $1,399. Diana paid Westfall's firm, Westfall Legal Services, L.P.A., a total of $700 from the parties' joint account. In July 2009, Westfall informed Diana and Michael that unless they either paid the balance of his fees or contacted his office to arrange a payment plan, he would deactivate their case.

{¶ 6} In October 2009, Westfall sent Diana and Michael a letter stating that their file had been closed for failure to make agreed payments. In December 2009, Diana authorized payment to Westfall from the couple's joint account for $500. However, in early 2010, while the couple was divorcing, Westfall withdrew from his representation of Diana. In February 2010, Westfall sent a letter addressed only to Michael indicating that because of the restraining orders in place, his firm would file the bankruptcy for Michael separately. The letter stated that Westfall would charge additional costs and fees to file a separate case for Diana, but it did not indicate whether Diana had been notified. Nor did the letter state whether Westfall had obtained Diana's informed consent to continue to represent Michael and file an individual bankruptcy. In April 2010, Diana requested from Westfall a refund of $700, which she asserted was her share of the money paid to him. Westfall failed to refund any money to Diana.

{¶ 7} The panel found that Westfall's conduct violated the following rules: Prof.Cond.R. 1.9(a), 1.16(d), and 1.16(e).

*Count Two: Gresham Grievance*

{¶ 8} In early 2010, Westfall sent Setsuko Gresham a letter soliciting her as a bankruptcy client. The letter used the phrase "Attorneys at Law" in the letterhead, listed eight separate office locations for Westfall Legal Services in Cuyahoga and neighboring counties, and repeatedly used the word "we" when referring to the firm. At that time, Westfall was the only lawyer affiliated with Westfall Legal Services.

{¶ 9} Westfall agreed to represent Setsuko and her husband, Charles Gresham, and they paid the full amount of fees and costs. In March 2010, the

Greshams met with Westfall's son, Jay Westfall, a nonlawyer employee of Westfall Legal Services. Jay discussed with Charles a possible strategy to avoid forfeiting an anticipated tax refund to the bankruptcy trustee.

{¶ 10} In July 2010, Westfall Legal Services informed the Greshams that their case had been deactivated for not providing information that had been requested from them and that additional fees would be required to reactivate the case. On August 3, 2010, Charles contacted Westfall Legal Services and indicated that he had complied with all requests. On August 5, 2010, Charles contacted Westfall Legal Services again and indicated to a staff member that he had complied with all requests. Three days after that conversation, Charles spoke with Jay, and on August 9, 2010, the Greshams supplied additional information. The information was reviewed by a Westfall Legal Services staff member, who determined that additional information was needed. On October 7, 2010, Setsuko sent Westfall a letter expressing concern that Westfall had not taken action on the Greshams' bankruptcy when they had submitted all the information that had been requested. Setsuko also requested that Westfall either issue a full refund of the payment or start the bankruptcy proceedings. On October 18, 2010, Westfall wrote to the Greshams, notifying them that their case had been closed since July 2010 and that it would take additional fees and costs to reopen the case. Westfall made no refund of the unearned fees and unspent costs, which, according to Westfall, totaled $399.

{¶ 11} The panel found that Westfall had violated the following rules: Prof.Cond.R. 1.4(a)(2), 1.4(a)(3), 1.4(a)(4), 1.16(d), 1.16(e), and 7.1.

*Count Three: Pestyk Grievance*

{¶ 12} In 2009, Westfall agreed to represent John P. Pestyk in a Chapter 7 bankruptcy. Pestyk prepaid Westfall's full fees and costs. In May 2009, Westfall notified Pestyk that his case would be deactivated in 30 days if Pestyk did not provide additional information. In response, Pestyk called Westfall to tell him

that he wanted to put the case on hold because his wife was gravely ill. She died in September, and in December 2009, Westfall sent Pestyk another 30-day deactivation notice. Pestyk called Westfall Legal Services to say that he did not want to continue with the bankruptcy case and asked for his money back. Pestyk's repeated calls seeking a refund were ignored for months. Pestyk eventually filed a grievance with relator in October 2010 and complained to the Better Business Bureau. Shortly thereafter, Westfall sent Pestyk a letter with a check for $499, but Pestyk testified that he never received it.

{¶ 13} The panel found that Westfall's misconduct violated Prof.Cond.R. 1.16(e).

*Count Four: Mosier Grievance*

{¶ 14} In 2009, Westfall agreed to represent Reba Mosier in a Chapter 7 bankruptcy. Subsequently, her husband, Charles Mosier, joined the action. Westfall was paid costs and fees totaling $1,299. The Mosiers missed two appointments with Westfall Legal Services staff in January and February 2010. Westfall sent the Mosiers two letters, one noting that further action on their case would be delayed until they scheduled another appointment and one stating that unless additional information was received within 14 days, the case would be deactivated, and reactivation would require additional fees. After hearing no response from the Mosiers, Westfall Legal Services informed them that the case was closed.

{¶ 15} Reba Mosier had symptoms of Alzheimer's disease, and Charles Mosier was bedridden and in home hospice care. Consequently, Reba authorized her son, William Mosier, to communicate with Westfall about their case. A staff member of Westfall Legal Services spoke with William about the case and requested that he obtain additional information from the Mosiers and provide it to Westfall. Westfall Legal Services received additional information, but the information was incomplete. In July 2010, William and Jay had a phone

conversation about a pending foreclosure action against Reba and Charles Mosier. Jay recorded the conversation. Westfall later testified that he was aware that Jay had recorded the phone call and that the recording had not been retained. Westfall also testified that he had listened to the recording, and it did not include a warning to William that the call was being recorded.

{¶ 16} The panel found violations of the following rules: Prof.Cond.R. 1.16(d), 1.16(e), and 5.3(b).

*Count Five: Failure to Supervise*

{¶ 17} Count Five alleged that Westfall failed to supervise his nonlawyer staff members, resulting in their unauthorized practice of law. The panel was unable to find that the furnishing of general information to clients by nonlawyers in this case constituted unauthorized practice of law and recommended that all charges related to this count be dismissed.

*Count Six: Failure to Pay Withheld Taxes*

{¶ 18} In accord with his obligations as an employer, Westfall withheld federal income tax and other payroll taxes from his employees' paychecks. He failed, however, to remit these amounts, as well as his employer's share, to the Internal Revenue Service for certain portions of 2009, 2010, and 2011. The panel found that this failure was a violation of Prof.Cond.R. 8.4(c) and 8.4(h).

*Count Seven: Disciplinary Investigation*

{¶ 19} Westfall made a false statement to relator during the disciplinary investigation by claiming that he had timely filed all tax returns. Westfall also failed to provide requested information relating to the withholding tax issue to investigators. The panel found that this conduct violated the following rules: Gov.Bar R. V(4)(G) and Prof.Cond.R. 8.1(b).

***Sanction***

{¶ 20} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the

6

sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 21}** The panel found several aggravating factors: Westfall's acts of misconduct demonstrated a selfish motive, a pattern of misconduct, multiple offenses, some lack of cooperation during the disciplinary process, refusal to acknowledge the wrongful nature of his conduct, harm to vulnerable clients, and failure to make restitution. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (g), (h), and (i).

**{¶ 22}** Mitigating factors found by the panel include a lack of prior discipline, a cooperative attitude during the actual panel proceedings, evidence of good character and reputation, and imposition of other penalties in connection with Westfall's tax problems. BCGD Proc.Reg. 10(B)(2)(a), (d), (e), and (f).

**{¶ 23}** The panel recommended that Westfall be suspended from the practice of law for two years, with six months stayed on certain conditions, including (1) restitution of specified amounts to certain named grievants, (2) remission of all amounts owed to the federal government or proof of a payment agreement with the Internal Revenue Service with which Westfall shall remain in compliance throughout the stay, and (3) commission of no further disciplinary violations.

**{¶ 24}** The board adopted the findings and conclusions of the panel, including the dismissal of Count Five for lack of evidence. However, the board amended the panel's suggested sanction, recommending instead that Westfall be suspended for two years with reinstatement conditioned on compliance with the conditions named by the panel.

{¶ 25} We agree with the board and find that the sanction corresponds to those previously issued for similar conduct. In *Cleveland Metro. Bar Assn. v. Gresley*, 127 Ohio St.3d 430, 2010-Ohio-6208, 940 N.E.2d 945, the attorney accepted fees from ten clients, failed to perform the agreed legal work, and then failed to cooperate in the ensuing disciplinary investigation. We imposed a two-year suspension with the final six months stayed on conditions. *Id.* at ¶ 27. In *Columbus Bar Assn. v. Ellis*, 120 Ohio St.3d 89, 2008-Ohio-5278, 896 N.E.2d 703, the attorney accepted fees from 18 clients. He then proceeded to fail in his obligations to those clients in several ways. He either abandoned or neglected their cases, engaged in acts of deceit, and failed to communicate with his clients on the progress of their cases. He also failed to cooperate in the disciplinary investigation. We suspended the attorney for two years, followed by a two-year probationary period with reinstatement contingent on certain conditions, including restitution. *Id.* at ¶ 11-13. Common to both cases was the attorney's continuing deceit toward his clients. *Gresley* at ¶ 17; *Ellis* at ¶ 7.

{¶ 26} Westfall's misconduct also involved the wrongful retention of funds in the form of payroll taxes withheld from employee wages over an almost two-year period. He used this money for his own benefit. By doing so, Westfall violated duties to the public and the legal profession. *Cuyahoga Cty. Bar Assn. v. Veneziano*, 120 Ohio St.3d 451, 2008-Ohio-6789, 900 N.E.2d 185, ¶ 10.

{¶ 27} Misconduct involving the failure to remit payroll taxes can warrant an indefinite suspension. *See*, *e.g.*, *Geauga Cty. Bar Assn. v. Bruner*, 98 Ohio St.3d 312, 2003-Ohio-736, 784 N.E.2d 687. However, the board found, and we agree, that Westfall's conduct is similar to that in *Northwest Ohio Bar Assn. v. Archer*, 129 Ohio St.3d 204, 2011-Ohio-3142, 951 N.E.2d 78. In *Archer*, the attorney withheld payroll taxes from his employees' wages for four years but failed to remit payment to the Internal Revenue Service. We imposed a one-year suspension on the attorney. We have also considered *Disciplinary Counsel v.*

*Large*, 122 Ohio St.3d 35, 2009-Ohio-2022, 907 N.E.2d 1162. In *Large*, the attorney failed to withhold any income taxes and Social Security contributions from his employees' wages and failed to report his employees' wages to the Internal Revenue Service for four years. We imposed a one-year license suspension on the attorney.

{¶ 28} As in *Archer* and *Large*, Westfall has shown evidence of good character and reputation. He has no prior disciplinary record and is subject to other penalties in connection with his tax issues.

{¶ 29} Having considered Westfall's misconduct relating to his clients and his employees, the aggravating and mitigating factors, and the sanctions imposed for comparable conduct, we adopt the board's recommendation. Accordingly, we suspend Westfall from the practice of law in Ohio for two years, with reinstatement contingent on the following conditions. Westfall must (a) make restitution as follows: $700 to Diana McCafferty, $399 to Charles and Setsuko Gresham, $499 to John Pestyk, and $599 to Reba L. Mosier, (b) pay the Internal Revenue Service all unpaid payroll taxes, interest, and penalty obligations owed up to the date of reinstatement or, alternatively, enter into, and comply with, an agreement with the Internal Revenue Service to pay all such obligations, (c) provide evidence satisfactory to relator of his compliance with the aforementioned conditions, and (d) commit no further violations. Costs are taxed to Westfall.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., dissents and would impose a two-year suspension with one year stayed.

_____

Ulmer & Berne, L.L.P., Gregory J. Phillips, and Erika Imre Schindler, for relator.

Laurence A. Turbow, L.P.A., Inc., and Laurence A. Turbow, for respondent.

_____