[Cite as *Disciplinary Counsel v. Leksan*, 136 Ohio St.3d 85, 2013-Ohio-2415.]

DISCIPLINARY COUNSEL *v.* LEKSAN.

[Cite as *Disciplinary Counsel v. Leksan*, **136 Ohio St.3d 85, 2013-Ohio-2415.**]

*Attorneys—Misconduct—Mismanagement of client trust account—Misappropriation of client funds—Significant mitigating circumstances—Indefinite suspension with reinstatement upon specified conditions.*

(No. 2012-2055—Submitted February 6, 2013—Decided June 13, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-031.

_____

**Per Curiam**.

{¶ 1} Respondent, Thomas John Leksan of Cincinnati, Ohio, Attorney Registration No. 0027125, was admitted to the practice of law in Ohio in 1982.[1]

{¶ 2} In a complaint certified by a probable-cause panel of the Board of Commissioners on Grievances and Discipline in April 2012, relator, disciplinary counsel, charged Leksan with 22 violations of the Rules of Professional Conduct arising from the improper handling of his client trust account. Relator alleged that Leksan had failed to maintain adequate records of the funds held in his client trust account; had failed to reconcile the account on a monthly basis; had misappropriated client funds for his personal and business expenses, for loans to his friends, and for distribution to clients whose funds he had previously misappropriated; and had improperly deposited his personal funds into his client trust account. Relator further alleged that Leksan's conduct involved dishonesty, fraud, deceit, or misrepresentation, was prejudicial to the administration of justice, and adversely reflected on his fitness to practice law.

_____

1. Leksan testified at the disciplinary hearing that he is also licensed to practice law in Kentucky.

{¶ 3} The parties submitted stipulations of fact and misconduct and of aggravating and mitigating factors and suggested that the appropriate sanction for Leksan's misconduct is a two-year suspension, with conditions on his reinstatement. They also submitted 26 stipulated exhibits.

{¶ 4} A panel of the board conducted a hearing in which Leksan testified about his misconduct, his long-term depression, and his gambling addiction. The panel adopted the parties' stipulations of fact, misconduct, and aggravating and mitigating factors but rejected the stipulated sanction, finding that an indefinite suspension with the stipulated conditions on Leksan's reinstatement is more appropriate.

{¶ 5} The full board adopted the panel's findings and recommended sanction. The board further recommends that we adopt the parties' stipulated conditions for Leksan's reinstatement to the practice of law. No objections have been filed.

{¶ 6} Having reviewed the record, we adopt the board's findings of fact and misconduct and indefinitely suspend Leksan from the practice of law in Ohio.

**Misconduct**

*Count One—General Trust-Account Violations*

{¶ 7} The parties stipulated that since 2009, Leksan has failed to maintain a general ledger or individual ledgers of client funds in his possession, in violation of Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held) and 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account) and has failed to reconcile his client trust account, in violation of Prof.Cond.R. 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account). From at least February 2009 through at least March 2011, Leksan retained earned fees in his

client trust account and withdrew them on an as-needed basis, deposited at least $89,435.55 in personal funds into that account to cover shortages created by his misappropriation of client funds, and used funds from the account to make more than $30,000 in personal loans to two of his friends, in violation of Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property) and 1.15(b) (permitting a lawyer to deposit his or her own funds in a client trust account only for the purpose of paying or obtaining a waiver of bank service charges).

*Count Two—Misappropriation of Funds Regarding Multiple Clients*

{¶ 8} On February 12, 2009, Leksan opened a client trust account at Park National Bank and deposited there a $50 check from a client trust account he maintained at Huntington Bank. He closed his client trust account at Huntington Bank later that month. Although he should have held more than $36,000 in trust for two clients at that time, he did not transfer any more funds to the Park National Bank account, because he had used his clients' money to pay his personal or business expenses or to pay other clients whose funds he had previously misappropriated.

{¶ 9} Over the next two and one-half years, Leksan repeatedly misappropriated funds from clients to satisfy his own financial obligations or obligations to other clients whose funds he had previously misappropriated. The parties and the board cite five examples of this pattern of misconduct:

{¶ 10} A. On August 25, 2009, Leksan deposited an $8,000 settlement check into his client trust account, from which his client David Leach was entitled to receive $5,557.77. Instead of distributing those funds to Leach, he paid another client, April Mills, $5,450.17, leaving a balance of only $112.42 in his client trust account at that time.

{¶ 11} B. On August 27, 2009, Leksan deposited a $55,000 settlement check in his client trust account. After attorney fees, costs, and expenses were

deducted from that settlement, his clients Judy and Edward Beasley were entitled to receive $25,000. From August 28, 2009, through September 8, 2009, Leksan did not distribute any funds to the Beasleys or their creditors, but used the proceeds of their settlement to pay his client Jennie Moore $31,050.63 and Leach $5,557.77, and to loan his friend Ron Tripodo $15,000, leaving just $53.95 in his client trust account.

{¶ 12} C. On November 25, 2009, Leksan deposited a $36,500 settlement check into his client trust account, from which his clients Mary and Stewart Daniel were entitled to receive $18,643.52. From November 25, 2009, through January 19, 2010, before disbursing any funds to the Daniels, he paid various bills on behalf of himself and other clients and loaned Tripodo another $10,000, leaving a balance of just $296.48 in his client trust account.

{¶ 13} D. On January 22, 2010, Leksan deposited a $19,730 settlement check—the entire amount of which he was to pay to Toyota Financial on behalf of his client Christopher Seda—into his client trust account. On January 25, 2009, before paying Toyota Financial, he used the settlement proceeds to pay the Daniels the $18,643.52 they were entitled to receive from their settlement. On February 11, 2010, his client trust account held only $132.96 when it should have held at least $19,730.

{¶ 14} E. On February 19, 2010, Leksan deposited two settlement checks totaling $10,655.24 into his client trust account, from which his client Lila Bumstead was entitled to receive $4,194.24, and his client Victoria Bumstead, was entitled to receive $2,794.29. Within days of depositing the settlement checks, Leksan withdrew $8,500 from his client trust account, leaving a balance of $2,288.20—$4,700.33 less than he owed the Bumsteads.

{¶ 15} The parties stipulated and the board found that by prematurely withdrawing client funds to satisfy his own personal obligations and those regarding other clients, Leksan violated Prof.Cond.R. 1.15(a), 8.4(c) (prohibiting

4

a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

*Count Three—The Chasteen Matter*

**{¶ 16}** On March 2, 2010, Leksan deposited a $137,500 check—the gross proceeds of a settlement he had obtained on behalf of his clients Kenneth and Alta Chasteen—into his client trust account. After deductions for attorney fees, costs, and medical expenses, the Chasteens were entitled to receive $84,685.55. However, Leksan used the settlement proceeds to pay $6,988.53 to the Bumsteads and $19,730 to Toyota Financial on behalf of Seda and to loan $6,000 to Tripodo.

**{¶ 17}** In mid-April 2010, Leksan issued a partial distribution of $45,000 to the Chasteens from his client trust account and advised them that he would hold the remaining $39,685.55 of their settlement proceeds while he negotiated their outstanding medical bills and insurance-subrogation matters. By July 22, 2010, however, he had withdrawn the remaining proceeds to pay personal or business expenses, leaving just $7.45 in his client trust account. Two insurers agreed to waive their entire subrogation liens, and in August 2010, the last subrogated insurer agreed to accept $5,000 as full and final payment. Leksan paid that insurer on November 2, 2010, using personal funds that he had deposited into his client trust account the previous week.

**{¶ 18}** The Chasteens inquired more than once about the remainder of their settlement proceeds, and Leksan initially advised them that their subrogation matters were still pending. Once the subrogation matters were resolved, however, he stopped accepting the Chasteens' calls. He did not distribute the remainder of their settlement proceeds to them until July 29, 2011—almost nine months after he had resolved the subrogation issues in their case.

**{¶ 19}** The parties stipulated and the board found that Leksan's conduct in the Chasteen matter violated Prof.Cond.R. 1.4(a)(4) (requiring a lawyer to comply

as soon as practicable with reasonable requests for information from the client), 1.15(a), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), 8.4(c), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h).

*Count Four—The Hedrick Matter*

{¶ 20} On August 20, 2010, Leksan deposited into his client trust account a $3,750 settlement check that he had received on behalf of his client Michael "Lars" Hedrick. The settlement proceeds were to be distributed as follows: $2,114.78 to Hedrick, $1,250 to Leksan, and $385.22 to Boilermakers National Health and Welfare Fund in satisfaction of a lien. Hedrick requested that Leksan pay the $385.22 directly to him so that Hedrick could extinguish the lien. While Leksan issued a $2,114.78 check payable to Hedrick on September 20, 2010, and withdrew his attorney fees from his client trust account on an as-needed basis, he did not release the remaining $385.22 to Hedrick until March 5, 2012. The balance in Leksan's client trust account, however, dropped below that amount on several occasions between August 20, 2010, and July 29, 2011, and the account was overdrawn by $107.54 on March 17, 2011.

{¶ 21} The parties stipulated and the board found that Leksan's conduct in the Hedrick matter violated Prof.Cond.R. 1.15(a), 1.15(d), 8.4(c), and 8.4(h).

*Count Five—The Carnine Matter*

{¶ 22} Leksan deposited a $19,000 settlement check into his client trust account on January 28, 2011. He met with his client Jason Carnine to distribute the settlement proceeds on January 31, 2011, and issued two checks to himself for fees and expenses totaling $6,612.44 and three checks to Carnine (at Carnine's request) totaling $7,977.35. He also drafted checks payable to five of Carnine's medical providers, showed Carnine the checks, and told him that he would mail them to the medical providers on Carnine's behalf. Leksan waited about five months—until June and July 2011—to mail the checks, and in the interim he used

the funds to pay his personal and business expenses or to pay other clients whose funds he had misappropriated. Although he should have retained at least $4,409.61 in his client trust account during that time, it was overdrawn by $57.54 in February 2011.

{¶ 23} The parties stipulated and the board found that Leksan's conduct in the Carnine matter violated Prof.Cond.R. 1.15(a), 1.15(d), 8.4(c), and 8.4(h).

{¶ 24} Upon a thorough review of the record, we adopt the board's findings of fact and misconduct with respect to each of these five counts.

### Sanction

{¶ 25} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 26} As aggravating factors, the parties stipulated and the board found that Leksan acted with a selfish or dishonest motive, engaged in a pattern of misconduct involving multiple offenses, and committed misconduct that caused harm to his clients. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (h). In mitigation, the parties stipulated and the board found that Leksan had no prior disciplinary record, made a good-faith effort to rectify the consequences of his misconduct, fully and freely disclosed his conduct to relator and displayed a cooperative attitude toward the disciplinary proceedings, and submitted evidence of his good character and reputation apart from the charged misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e).

{¶ 27} The board also found that Leksan was recovering from a gambling addiction, was struggling with an alcohol addiction, and had been engaged in

treatment for these and other problems for more than ten years. Relevant to these considerations, the record contains a letter from psychiatrist John M. Hawkins, M.D., who states that he has treated Leksan for depression and low self-esteem for more than ten years. Dr. Hawkins's letter states that Leksan has focused on helping people in his law practice, but that Leksan failed to stay on top of his accounts receivable and accepted too many cases in which the clients could not pay him. In Dr. Hawkins's view, several factors, in particular Leksan's "desire to be with people in a higher socio-economic class and spending beyond his means, led to mismanagement of his personal and professional accounts." Dr. Hawkins's letter additionally states that Leksan believed that his gambling addiction was a way to resolve his debts and used gambling as a psychological distraction to avoid his feelings of pain and low self-acceptance. Unfortunately, that addiction only worsened Leksan's financial condition.

{¶ 28} Dr. Hawkins states that Leksan began to address his gambling and alcohol addictions in early 2009 with the help of Gamblers Anonymous, Alcoholics Anonymous, and the Ohio Lawyers Assistance Program ("OLAP"). He believes that Leksan has made tremendous strides in the treatment of his psychological problems and addictions, that he has new tools and a support system to assist him, and that he remains committed to his treatment program. He believes that Leksan can successfully and responsibly practice law in the future. Based on Dr. Hawkins's statements, we find that Leksan's depression and alcohol and gambling addictions qualify as mitigating factors pursuant to BCGD Proc.Reg. 10(B)(2)(g).

{¶ 29} The parties stipulated that the proper sanction for Leksan's misconduct is a two-year suspension from the practice of law, with reinstatement conditioned on the submission of proof that he has (1) completed 12 hours of continuing legal education ("CLE") in law-office management, (2) implemented a

system to properly manage client funds in his practice, and (3) complied with his OLAP contract as well as the recommendations of his treating professionals.

{¶ 30} Disbarment is the presumptive sanction for an attorney who misappropriates client funds, but we have recognized that in some misappropriation cases significant mitigating circumstances may weigh in favor of an indefinite suspension. *Cincinnati Bar Assn. v. Rothermel*, 104 Ohio St.3d 413, 2004-Ohio-6559, 819 N.E.2d 1099, ¶ 18, citing *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 15.

{¶ 31} In support of their stipulated sanction, the parties cited *Columbus Bar Assn. v. King*, 132 Ohio St.3d 501, 2012-Ohio-873, 974 N.E.2d 1180 (imposing a two-year suspension on an attorney who, over a period of months, used client-trust-account funds to pay his own expenses, deposited personal funds into and failed to keep adequate records of the funds held in his client trust account, fabricated a fee dispute to justify his failure to promptly return a client's money, and failed to advise his clients that he did not carry malpractice insurance), and *Disciplinary Counsel v. Crosby*, 124 Ohio St.3d 226, 2009-Ohio-6763, 921 N.E.2d 225 (imposing a two-year suspension on an attorney who used his client trust account for personal and business expenses, failed to maintain adequate records of the funds, and failed to promptly withdraw his earned fees). Neither of these cases, however, involved Leksan's primary offense—the misappropriation of substantial client funds.

{¶ 32} The board acknowledged that Leksan obtained treatment for his diagnosed depression, as well as his alcohol and gambling addictions, and that he continues to aggressively pursue treatment by meeting with his treating professionals five days per week. He has made his clients whole, having restored most of the misappropriated funds before his misconduct was even discovered. He has confessed his misconduct to all but one of the affected clients and many

have written letters of recommendation on his behalf asking for leniency.[2]  He also has submitted more than 20 letters—many from fellow attorneys—attesting to his honesty, professionalism, and good character apart from the charged misconduct.  Two of Leksan's character-reference letters are from members of Gamblers Anonymous who praise him for the inspiration and assistance he has given them (and others like them) in addressing not only their compulsive gambling but also the legal repercussions of their addictions.

{¶ 33} The board found that Leksan had been cooperative, sincere, and frank with relator and the panel.  The board also expressed a belief that he "knowingly" caused his client trust account to be overdrawn (by less than $150) so that the bank would inform relator of the overdraft and bring a stop to his ethical violations.  In light of these mitigating factors, the absence of any prior violations, Leksan's demeanor at the panel hearing, and his efforts to wind down his practice, the panel was persuaded that permanent disbarment was not warranted.  But the panel was not convinced that the stipulated two-year suspension was an adequate sanction for Leksan's misconduct.  Therefore, the panel recommended that he be indefinitely suspended from the practice of law in Ohio and that his reinstatement be subject to the conditions stipulated by the parties.  The board concurred in the panel's analysis and recommendation.

{¶ 34} Having reviewed the record, including the circumstances of Leksan's misconduct as well as the aggravating and mitigating factors found by the board, we agree that an indefinite suspension is the appropriate sanction in this case.  We have imposed indefinite suspensions for similar instances of misconduct involving the misappropriation of client funds.  *See, e.g.*, *Akron Bar Assn. v. Smithern*, 125 Ohio St.3d 72, 2010-Ohio-652, 926 N.E.2d 274 (indefinitely suspending an attorney for converting client funds on more than 30

---

2. Leksan testified at the disciplinary hearing that the remaining client could not be located.

separate occasions and for depositing more than $100,000 in client retainers into her personal bank account rather than her firm's trust account; mitigating factors included more than 20 years of practice without disciplinary violations, cooperation in the disciplinary proceedings, an agreement to make full restitution, and gambling and alcohol addictions that were causally related to the attorney's misconduct).

{¶ 35} Accordingly, Thomas John Leksan is indefinitely suspended from the practice of law in Ohio, and his reinstatement is conditioned on the submission of proof that he has (1) completed 12 hours of CLE in law-office management in addition to meeting the requirements of Gov.Bar R. X, (2) implemented a system to properly manage client funds in his practice, and (3) complied with his OLAP contract and the recommendations of his treating professionals. Costs are taxed to Leksan.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

Jonathan E. Coughlan, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson, L.P.A., and George D. Jonson, for respondent.

————————————