COLUMBUS BAR ASSOCIATION *v*. GILL.

[Cite as *Columbus Bar Assn. v. Gill,* 137 Ohio St.3d 277, 2013-Ohio-4619.]

*Attorney discipline—Multiple violations of Rules of Professional Conduct—Two-year suspension, with one year stayed on conditions including use of alcohol-monitoring device.*

(No. 2012-2069—Submitted April 23, 2013—Decided October 24, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-007.

_____

**Per Curiam**.

{¶ 1} Respondent, Sterling Everard Gill II of Columbus, Ohio, Attorney Registration No. 0034021, was admitted to the practice of law in Ohio in 1978. In 1988, we indefinitely suspended him for improperly endorsing a client's name on a settlement check and converting a portion of the settlement amount to personal use. *Columbus Bar Assn. v. Gill*, 39 Ohio St.3d 4, 528 N.E.2d 945 (1988). As noted in that opinion, Gill's dependency on alcohol and drugs was a significant factor causing his misconduct. *Id.* at 7. We reinstated Gill to the practice of law in 1990, *Columbus Bar Assn. v. Gill*, 56 Ohio St.3d 602, 565 N.E.2d 539 (1990), but in April 2007, we suspended him again for failing to comply with the continuing-legal-education requirements of Gov.Bar R. X. After Gill satisfied all the requirements of our suspension order, we reinstated him in June 2007. *In re Gill*, 114 Ohio St.3d 1405, 2007-Ohio-2710, 867 N.E.2d 840.

{¶ 2} In the present matter, relator, Columbus Bar Association, filed an 11-count second amended complaint, charging Gill with 53 disciplinary-rule violations and alleging that his recent lapses in sobriety caused some of this professional misconduct. Gill and relator agreed to a comprehensive list of

stipulations, including 41 rule violations, and relator withdrew its remaining charges. After a hearing, a three-member panel of the Board of Commissioners on Grievances and Discipline accepted the parties' stipulations of fact and misconduct, with one exception, and recommended that Gill be suspended from the practice of law for two years, with 18 months stayed on conditions. The board adopted the panel's findings of fact and misconduct but recommends that we indefinitely suspend Gill from the practice of law.

{¶ 3} Gill objects to the board's recommended sanction, arguing that an indefinite suspension is overly punitive and not supported by the record or our precedent. Gill instead requests that we adopt the panel's recommended sanction. Relator has also refrained from endorsing the board's recommendation, advocating instead an actual two-year suspension, with rigorous conditions on reinstatement.

{¶ 4} For the reasons explained herein, we adopt the board's findings of fact and misconduct but sustain Gill's objection, at least in part. Gill shall be suspended for two years, with the second year stayed on the conditions set forth below.

**Misconduct**

{¶ 5} Gill's 40 rule violations originated from nine grievances, a criminal conviction, and his failure to respond to relator's inquiries about these matters.

*Client/potential-client grievances*

{¶ 6} Gill is a solo practitioner focusing in criminal defense. Out of the ten grievances filed against him, six were from relatives of clients or potential clients. The acts of misconduct in five of these matters—encompassing Counts One, Two, Four, Six, and Ten of relator's second amended complaint—were similar and resulted mostly from a failure to effectively communicate with clients—especially about the basis of his fees and his lack of professional

malpractice insurance. In addition, at all relevant times, Gill did not have—and therefore did not deposit client funds into—a client trust account.

{¶ 7} Count Four is a good example of the nature of Gill's misconduct. In that matter, Gill informed the mother of a murder defendant that he and another attorney would accept her son's case. The defendant's mother paid Gill a $15,000 retainer, and Gill had the mother sign a fee agreement. But the agreement did not specifically address the scope of the attorneys' representation, the sharing of their legal fees, or the payment of their expenses. In addition, Gill did not secure a signed notice from the mother regarding his lack of insurance. Finally, because Gill did not have a client trust account, he did not hold the mother's funds separate from his own money.

{¶ 8} The defendant eventually obtained other counsel, and Gill refunded the mother's retainer. The parties stipulated, the board found, and we agree, that Gill violated Prof.Cond.R. 1.4(c) (requiring a lawyer to obtain a signed acknowledgment from the client that the attorney does not maintain professional malpractice insurance), 1.5(b) (requiring an attorney to communicate the basis or rate of the fee and nature and scope of the representation within a reasonable time after commencing the representation), 1.5(e) (permitting attorneys who are not in the same firm to divide fees only if the client consents to the arrangement in writing after full disclosure), 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 9} Count Two is another representative example of Gill's ethical violations. In that matter, he agreed to help a client regain possession of her automobile in exchange for a $750 flat fee. But Gill did not adequately explain the basis of the fee, the circumstances under which the flat fee could have been refunded, or that he did not have professional malpractice insurance. Moreover,

after paying the fee, the client did not hear from Gill for several months. Although he eventually negotiated the return of his client's auto—and partially refunded her money—the parties stipulated, the board found, and we agree, that Gill violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(c), 1.5(b), 1.5(d)(3) (prohibiting a lawyer from charging a flat fee without simultaneously advising the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation), and 8.4(h).

{¶ 10} We also agree with the board that in the three other similar client matters—Counts One, Six, and Ten—Gill's conduct resulted in an additional violation of Prof.Cond.R. 1.3, 1.4(c), 1.5(b), and 1.15(a), three more violations of Prof.Cond.R. 8.4(h), and a violation of 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions). We also agree with the board's recommendation to dismiss the stipulated violation of Prof.Cond.R. 1.5(d)(3) under Count One for insufficient evidence. Accordingly, we dismiss that charge.

*Judicial grievances*

{¶ 11} Relator also received grievances against Gill from three judicial employees: Ross County Common Pleas Court Judge Scott W. Nusbaum, former Franklin County Municipal Court Judge Eric Brown, and Sharon A. Maerten-Moore, court administrator for the Fourth District Court of Appeals. These grievances resulted in Counts Seven, Eight, and Nine of relator's second amended complaint.

{¶ 12} In the common pleas court case, Judge Nusbaum denied Gill's request for a continuation of a trial, but Gill nonetheless instructed his client not to appear for the scheduled trial. When Gill appeared by himself, he was an hour

4

and 45 minutes late, which led to contempt-of-court charges against him. The parties stipulated, the board found, and we agree, that Gill's conduct violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and 8.4(h).

{¶ 13} In the municipal court case, Gill appeared three hours late for a hearing. Judge Brown suspected that Gill was under the influence of alcohol and had an officer administer an alcohol test, which registered Gill's breath-alcohol content as ".022" (presumably in units of grams per 210 liters of breath). Judge Brown reprimanded Gill and excused him from the courtroom. The parties stipulated, the board found, and we agree, that Gill's conduct violated Prof.Cond.R. 8.4(h).

{¶ 14} In the appeals court case, Gill filed an untimely notice of appeal on behalf of two codefendants. The court allowed the delayed appeals, but Gill then failed to timely file merit briefs, resulting in dismissal of the appeals. The appeals court ultimately reopened the case and accepted the merit briefs for filing, but the parties stipulated, the board found, and we agree, that Gill's conduct violated Prof.Cond.R. 1.3, 8.4(d), and 8.4(h).

*Gill's criminal conviction—Count Five*

{¶ 15} In 2010, Gill pled guilty to reckless operation of a motor vehicle for rear-ending a car on the highway, leaving the accident scene, and failing to report the accident. When relator sent Gill an inquiry regarding his conviction, Gill failed to respond. Under Count Five, the parties stipulated, the board found, and we agree, that Gill violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and 8.4(h).

*Gill's failure to respond to relator's other inquiries*

{¶ 16} After receiving each of the grievances against Gill, relator sent him a copy and requested that he respond. Even though Gill admitted receiving

relator's letters, he failed to respond to any. Indeed, with respect to two of the grievances—which resulted in Counts Three and Eleven—Gill was charged only with misconduct relating to his failure to respond to relator's inquiries, rather than the underlying allegations from the grievance. Accordingly, we agree with the board's findings that Gill committed nine additional violations of Prof.Cond.R. 8.1(b), two violations of Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation), and two additional violations of Prof.Cond.R. 8.4(h).

**Sanction**

{¶ 17} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties violated, the actual injury caused, the existence of any aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B), and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16; *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Here, relator recommends that Gill be suspended for two years, with stipulated conditions. The panel recommended a two-year suspension with 18 months stayed. Without any explanation, the board recommends increasing the sanction to an indefinite suspension. In his objections, Gill argues that the panel's recommendation is more consistent with our precedent. Based on the relevant factors, we find that the appropriate sanction is between the panel's recommendation and that of relator.

*Ethical duties violated and injuries caused*

{¶ 18} We have already identified Gill's ethical breaches of duties to his clients and the legal profession. To be sure, the scope and magnitude of Gill's misconduct are troubling. However, Gill's misconduct is not the most egregious that has come before us. He has not misappropriated any client funds, demonstrated incompetence in or pervasive neglect of client matters, or engaged

in any conduct involving dishonesty, fraud, deceit, or misrepresentation. And as the board acknowledged, none of Gill's clients have suffered much, if any, actual harm as a result of Gill's conduct. Indeed, two grievants filed fee-arbitration requests with relator, but both disputes were dismissed in Gill's favor.

*Aggravating and mitigating factors*

{¶ 19} In aggravation, Gill has a prior disciplinary offense, engaged in a pattern of misconduct, and committed multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(a), (c), and (d). While we agree with the board's finding that Gill's failure to respond to relator's initial inquiries also constitutes an aggravating factor under BCGD Proc.Reg. 10(B)(2)(e), we give this factor little weight, considering that Gill eventually cooperated in the board proceedings, entered into an extensive list of stipulations admitting most of the charged misconduct, and agreed to a stipulated treatment regimen. Finally, we agree with the board's conclusion that Gill's complacency in establishing a client trust account constitutes an aggravating factor. Gill had been on notice since at least the filing of the disciplinary complaint that the Ohio Rules of Professional Conduct required him to create a client trust account. But inexplicably, he had not yet established one by the date of the panel hearing, even though he continued to receive client retainers.

{¶ 20} In mitigation, Gill has acknowledged the wrongfulness of his conduct and has not exhibited a dishonest or selfish motive. *See* BCGD Proc.Reg. 10(B)(2)(b). Further, a qualified health-care professional has determined that a chemical dependency and mental disability contributed to his misconduct. *See* BCGD Proc.Reg. 10(B)(2)(g). Indeed, Gill's alcoholism and recently diagnosed bipolar disorder weigh heavily in our analysis of the appropriate sanction.

{¶ 21} After Gill's 1988 suspension, he remained sober for about 14 years. But around 2003, he began having relapses every six months or so—despite completion of a treatment program during this time period. In 2010, he

was convicted of a traffic offense, placed on probation, and required to complete another treatment program with the Columbus Health Department, which he successfully completed in September 2011. But by November 2011, he had relapsed again, resulting in Judge Brown's reprimand for appearing in his court under the influence. Probation authorities then required that Gill wear an ankle monitor to detect any use of alcohol. In February 2012, Gill entered the House of Hope treatment program, and by July 2012, he completed that program and all other conditions of his probation, which expired in the same month.

{¶ 22} According to Gill—and there is no evidence to the contrary—he has been sober since November 2011. With the exception of paying his dues, the clinical director of the Ohio Lawyers Assistance Program ("OLAP") also confirmed that he is in compliance with a five-year contract that he signed in March 2011. Under that contract, he calls OLAP daily, attends Alcoholics Anonymous ("AA") seven times per week, has an AA sponsor, and must undergo random drug and alcohol testing.

{¶ 23} In addition to his alcohol addiction, a licensed clinical psychologist recently diagnosed Gill with bipolar mood disorder, with which he had not been previously diagnosed. The psychologist further concluded that both of Gill's psychological disorders—alcohol addiction and bipolar mood disorder—contributed to the professional misconduct at issue here and that Gill should be able to return to the competent and ethical practice of law, as long as he continues taking his recommended medication, continues psychotherapy, and continues working with AA and OLAP. Gill's psychologist, however, made this diagnosis in August 2012, and the panel hearing occurred less than three months later in October 2012. Thus, by the date of the panel hearing, Gill had seen the psychologist only two or three times each month, and he therefore had not sustained a lengthy period of successful treatment on this new regimen. Nonetheless, OLAP's clinical director testified that the new treatment program

appeared to be working well, and Gill's previous chronic relapses may have been caused by the fact that his bipolar mood disorder was not appropriately diagnosed. She further concluded that Gill's current treatment plan—including medication, psychotherapy, AA, and the OLAP recovery contract—was the "best foundation" that Gill has had since he started working with OLAP in 2002 because he was finally treating both of his disorders.

{¶ 24} While we consider Gill's psychological disorders as mitigating evidence, we cannot accept the conclusion that they caused all of his professional misconduct. The disorders may have affected his ability to timely respond to relator's inquiries and to effectively communicate with his clients, but Gill has no excuse for failing to establish a client trust account. By August 2012, Gill had been diagnosed with both disorders and had started treatment for both, but for the next three months, he continued to accept client retainers without safekeeping those client funds in a trust account. Nothing in the record excuses this misconduct.

*Applicable precedent*

{¶ 25} The facts of each disciplinary case are unique, and because of that, the panel and the parties have understandably struggled to set forth precedent with circumstances similar to those here. For example, to support its recommendation of a two-year suspension with 18 months stayed, the panel relied primarily on *Disciplinary Counsel v. Johnson*, 131 Ohio St.3d 372, 2012-Ohio-1284, 965 N.E.2d 294, and *Erie-Huron Counties Joint Certified Grievance Commt. v. Derby*, 131 Ohio St.3d 144, 2012-Ohio-78, 961 N.E.2d 1124. Like Gill, the attorney in *Johnson* initially failed to cooperate in the disciplinary investigation and suffered from mental disabilities that contributed to his misconduct. *Johnson* at ¶ 13-14. But that attorney's misconduct occurred in only one client matter, and he had no prior discipline over his 35-year career. *Id.* at ¶ 1, 5-13. The attorney in *Derby* also had no prior disciplinary offenses. *Derby* at ¶ 10. Given Gill's

widespread ethical violations here and his disciplinary record, a harsher sanction than that issued in *Johnson* and *Derby* is justified.

{¶ 26} On the other hand, the facts of the present case are also distinguishable from the cases relied on by relator. For example, two of the cases cited by relator—*Columbus Bar Assn. v. King*, 132 Ohio St.3d 501, 2012-Ohio-873, 974 N.E.2d 1180, and *Cleveland Metro. Bar Assn. v. Westfall*, 134 Ohio St.3d 127, 2012-Ohio-5365, 980 N.E.2d 982—involved misconduct similar to Gill's, but neither case included mitigating evidence of addiction and mental disorder that contributed to the attorney's professional misconduct. *See King* at ¶ 3-11, 13; *Westfall* at ¶ 5-19, 22. These cases suggest that a lesser penalty than an actual two-year suspension is warranted.

{¶ 27} Finally, although the board has not cited any precedent to support its recommendation of an indefinite suspension, we find our recent decision *Disciplinary Counsel v. Leksan*, 136 Ohio St.3d 85, 2013-Ohio-2415, 990 N.E.2d 591, to be instructive. In that case, we indefinitely suspended a 30-year attorney who—like Gill—suffered for more than ten years with addictions and a mental-health condition, and we found that these disorders contributed to his misconduct, including the misuse of his client trust account. *Leksan* at ¶ 7-24, 27-28, 35. The attorney in *Leksan* did not have a prior disciplinary record, but we ultimately issued an indefinite suspension because of his "primary offense—the misappropriation of substantial client funds." *Id.* at ¶ 31. The record here lacks any similar claims of theft or misappropriation, which suggests that a lesser sanction is justified.

## Conclusion

{¶ 28} Having reviewed Gill's ethical violations and the aggravating and mitigating factors, and having considered the sanctions imposed for comparable conduct, we sustain Gill's objection, in part, and find that the appropriate sanction lies between the panel's recommendation and that of relator: a two-year

suspension with the second year stayed on the board-recommended conditions, plus one additional condition. Given Gill's history of relapses, a significant suspension is necessary to ensure that Gill's new treatment regimen continues its initial success for a more sustained period of time. This sanction will appropriately protect the public but allow Gill to return to the competent and ethical practice of law, provided that he continues his daily efforts at maintaining sobriety and managing his mental illness.

{¶ 29} Also, during oral argument, Gill's counsel suggested that as an additional condition of his suspension, Gill would pay for and wear an alcohol-monitoring device on his ankle for the term of his suspension. Considering Gill's previous success with the device during his probation, we find that this condition is reasonable.

{¶ 30} Accordingly, Gill is hereby suspended from the practice of law in Ohio for two years, with the second year stayed on the condition that within 60 days of the court's suspension order, Gill obtain and begin wearing an alcohol-monitoring device on his ankle for the remainder of the two-year term of suspension. Gill and relator shall arrange for relator to be notified if the device detects any alcohol consumption by Gill. If the device detects alcohol during the term of Gill's suspension or if Gill otherwise fails to comply with this condition during his suspension, the stay shall be lifted, and Gill shall serve the entire two-year suspension.

{¶ 31} In addition, in applying for reinstatement pursuant to Gov.Bar R. V(10), Gill must demonstrate that he has met the following conditions, as recommended by the board: (1) he has established a client trust account, (2) he has completed 12 hours of continuing legal education on law-office management in addition to the requirements of Gov.Bar R. X(3)(G), at least six hours of which shall be focused on the proper use and maintenance of his trust account, (3) he has complied with all terms of his OLAP contract and has followed all of OLAP's

treatment recommendations, including contract renewal (if applicable), attendance at a specified number of AA meetings each week, maintenance of an AA sponsor, random drug testing, and continued treatment for his addiction and bipolar mood disorder by a qualified mental-health provider, (4) he has not committed any further misconduct, and (5) he has submitted proof to a reasonable degree of medical certainty from a qualified medical professional that he is fit to return to the competent, ethical, and professional practice of law. If reinstated, Gill shall serve a two-year probation under the supervision of a monitoring attorney in accordance with Gov.Bar R. V(9). Costs are taxed to Gill.

Judgment accordingly.

PFEIFER, O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., dissent and would impose an indefinite suspension, as recommended by the board.

_____

James L. Ervin Jr., Bruce Campbell, and A. Alysha Clous, for relator.

Kenneth R. Donchatz, for respondent.

_____